ASOCIACIÓN DE RESIDENTES PARQUE MONTEBELLO, demandante y peticionaria, *v.* MONTEBELLO DEVELOPMENT CORPORATION, y la ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS, demandadas y recurridas.

*Número:* CE-93-731          *Resuelto:* 2 de mayo de 1995

413

*Roberto Vélez Colón*, abogado de las peticionarias; *José Raúl Ibarra Morales*, abogado de las recurridas.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Este recurso está atado "al tema de las zonas verdes y espacios libres en las ciudades. Al aprobarse los planes de urbanismo, al ciudadano se le promete una serie de medidas en esta materia; y luego la realidad le demuestra que los espacios verdes de parques y jardines proyectados no se construyen o se reducen notablemente, que los volúmenes de edificación se aumentan, que los espacios libres de la ciudad se reducen en definitiva". R. Gómez-Ferrer Morant, *Las zonas verdes y espacios libres como problema jurídico*, Madrid, Ed. Tecnos, 1971, pág. 1.

Este pasaje, escrito en el entorno de la Península Ibérica, cobra más relieve en nuestra limitada geografía insular. Existe un apetito voraz de explotar y agotar las reservas de áreas verdes en las zonas urbanas. El impacto detrimental entre sus residentes y los sistemas ecológicos requiere constantemente armonizar y balancear los intereses de desarrolladores —urbanizadores— y aquellos residentes interesados en preservar, en su mayor integridad posible, esas áreas verdes. Los mediadores del balance son la Junta de Planificación y la Administración de Reglamentos y Permisos (en adelante A.R.Pe.) quienes primeramente tienen a su cargo decisiones de esta índole. El proceso decisorio presupone que hayan salvaguardado los derechos constitucionales, estatutarios y reglamentarios de los afectados.

El progreso, la planificación y la necesidad de desarrollar áreas urbanas no es carta blanca para violar derechos previamente adquiridos por ciudadanos que, aun sin contar con la técnica y afluencia económica de las corporaciones constructoras, poseen un legítimo interés en mantener incólumes áreas verdes de recreación y disfrute comunitario.

Con vista a este brevísimo marco conceptual, examinamos si el conocimiento *constructivo* de una resolución de A.R.Pe. es suficiente punto de partida para anular trámites subsiguientes de naturaleza jurisdiccional. Examina-

mos, también, si A.R.Pe. puede variar *ex parte* los derechos adquiridos de los propietarios residentes de una urbanización, al aprobar un desarrollo alterno que cambia el uso y reduce sustancialmente las áreas verdes y de recreación para el uso común, integradas al desarrollo original y momento en que compraron sus residencias.

I

El 24 de marzo de 1987 A.R.Pe. autorizó un plano de desarrollo preliminar para el proyecto de urbanización residencial *Parque de Montebello* ubicado en la Carr. Estatal Núm. 876, Barrio Las Cuevas en Trujillo Alto (Caso Núm. 86-19-A-787-CPD). El 5 de mayo de 1989 su Director Regional de San Juan aprobó el permiso de urbanización para los planos de construcción en ciento cinco (105) solares residenciales, certificado por Montebello Development Corporation, a través del Ing. Eduardo Colón Arizmendi, a tenor con el Reglamento de Planificación Núm. 12, Junta de Planificación de Puerto Rico, 31 de julio de 1974. Posteriormente, el 5 de julio de 1990, autorizó la construcción de once (11) unidades en hileras en los lotes uno (1) al once (11).

Terminado el proyecto principal (Montebello) nuevamente por conducto del ingeniero Colón Arizmendi sometió en A.R.Pe. —vía comunicaciones de 18 de febrero y 18 de agosto de 1992— un plano de desarrollo preliminar *alterno*. Éste rediseñó el proyecto para la construcción de once (11) unidades de vivienda *adicionales* de las cuales seis (6) serían construidas en hileras en un predio reservado como remanente de dos mil setecientos sesenta (2,760) metros cuadrados; tres (3) unidades en parte del sector oeste del *predio originalmente destinado para facilidades vecinales*; una (1) tipo casa-patio en el lote número F-11 de la urbanización; y otra unidad unifamiliar al norte del lote número A-21. *Como resultado de este rediseño, la*

*cabida para las facilidades vecinales de uso común se re-*
*dujo sustancialmente de diez mil setecientos diecinueve*
*punto treinta y cinco (10,719.35) a seis mil ochocientos*
*veintitrés punto noventa y cuatro (6,823.94) metros*
*cuadrados.*

El 27 de octubre A.R.Pe. aprobó el desarrollo preliminar
alterno (Caso Núm. 86-19-A-787-CPD) y autorizó la prepa-
ración y certificación de las enmiendas a los planos de
construcción para las obras de urbanización, sujeto a cier-
tas condiciones. Consignó que "cualquier parte adversa-
mente afectada por esta decisión podrá presentar una mo-
ción de reconsideración ante la Secretaría de esta
Administración de Reglamentos y Permisos, dentro del tér-
mino de veinte (20) días naturales desde la fecha de ar-
chivo en autos de la notificación de esta resolución, certifi-
cando haberle notificado con copia de la misma a todas las
partes interesadas". *Exhibit* I, pág. 5. Además, expuso que
de rechazarse de plano la reconsideración, la parte tendría
derecho a solicitar revisión judicial ante el Tribunal
Superior. *Es importante destacar que para esta fecha ya*
*residían más de cien (100) familias en la urbanización.*

El 4 de diciembre *la Asociación de Residentes de Parque*
*Montebello* solicitó intervención en A.R.Pe. alegando que
sus intereses no estaban debidamente representados; que
el trámite podía afectar adversamente a los residentes; que
las enmiendas a los planos de construcción disponían y dis-
tribuían propiedad sobre la cual tenían un interés propie-
tario, *y que la Resolución de 27 de octubre no le fue*
*notificada.* Adujo que negarle intervenir le impediría en su
día ir al Tribunal Superior en revisión; en la alternativa
pidió reconsideración de dicha resolución.

Ante estas mociones, el 16 de diciembre A.R.Pe. dejó en
suspenso el *plano de desarrollo preliminar alterno* y la re-
solución aludida hasta que se discutieran en una vista ad-
ministrativa que señaló para el 19 de febrero de 1993. Lle-
gada esa fecha, Montebello solicitó suspensión. Alegó que

A.R.Pe. carecía de jurisdicción, pues la moción de reconsideración fue presentada a los treinta y ocho (38) días de notificarse la resolución, transcurrido el término de veinte (20) días dispuesto en la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.*, y en el Reglamento de Procedimiento Adjudicativo de A.R.Pe. Con la objeción de la Asociación de Residentes, A.R.Pe. suspendió hasta el 5 de marzo.

Posteriormente, las partes presentaron memorandos de derecho en apoyo de sus respectivas contenciones. La Asociación de Residentes argumentó que el término de veinte (20) días para la reconsideración cubría sólo a toda *"parte"* adversamente afectada por la resolución y no le aplicaba pues no había sido "parte" ni formalmente notificada de esa resolución. También señaló que las determinaciones de A.R.Pe. no fueron producto de vistas adjudicativas administrativas sino de reuniones informales *ex parte*,[1] entre A.R.Pe., el Ingeniero de Montebello y otras agencias que aparecen como partes interesadas. Finalmente, adujo que dicha resolución adjudicaba "derechos que no ponían fin a cualquier controversia total, y el alcance de la misma solo era aplicable a las partes que participaron del proceso".

En contra, Montebello expuso que, aunque la Asociación de Residentes no había sido formalmente notificada, poseía conocimiento del nuevo proyecto y de la susodicha resolución. Se fundamentó en una Carta de 11 de noviembre de 1992 que cursó el Presidente de la Asociación, Sr. Víctor Cepeda, a su homólogo de Montebello, Sr. Luis Cela.[2] Previa recomendación de su Oficial Examinador, el

---

[1] Celebradas el 24 de marzo de 1987, el 5 de mayo de 1989, febrero y julio de 1992.

[2] La carta expone lo siguiente:
"ASOCIACION DE RESIDENTES PARQUE MONTEBELLO
"Post Office Service RR-2 Box 47
"San Juan, Puerto Rico 00928

26 de agosto de 1993 A.R.Pe. dictaminó que carecía de jurisdicción,([3]) declaró sin lugar la moción de la Asociación y ordenó la continuación de los procedimientos sin su participación.

Aunque A.R.Pe. no hizo determinación respecto a si la resolución se había notificado formalmente a la Asociación de Residentes, concluyó que ésta tuvo conocimiento específico de ella. Lo infirió de la carta del señor Cepeda, invitando al señor Cela a una asamblea extraordinaria de residentes donde se discutiría "la *construcción* de las viviendas". De este modo, A.R.Pe. entendió que la *notificación formal* no era necesaria pues la Asociación de Residentes conoció la resolución con tiempo suficiente para solicitar reconsideración.

No conforme, el 24 de septiembre de 1993 la Asociación

---

"11   de noviembre de 1992

"Sr. Luis Cela, Presidente Parque Montebello Development, Inc.

"Calle Paraná 1660 Urb. El Cerezal Río Piedras, Puerto Rico 00926

"Estimado señor Cela:

"En los pasados días te comuniqué la necesidad que tenemos de instalar los servicios de energía eléctrica y de agua en la caseta de seguridad y así poder hacer todos los proyectos programados para mejorar la seguridad de los residentes en la urbanización. Estamos recibiendo muchas quejas y presiones de los residentes en cuanto a este problema, a la limpieza de los solares vac[í]os de tu propiedad y por la remoción de los vagones.

"Nos urge que nos entregues a la brevedad las certificaciones eléctricas y de plomería, nos limpies los solares y nos remueva[s] los vagones. Solicitamos tu cooperación en este respecto, ya que queremos tener limpia y arreglada nuestra urbanización para el período navideño que se avecina.

"Quiero aprovechar además, para informarte que en la pasada reunión de la Junta de Directores, se acordó convocar a los residentes para una Asamblea Extraordinaria el día 24 de noviembre a las 7:30PM en las facilidades recreativas *con relación a la construcción de las viviendas que ustedes piensan realizar próximamente en la urbanización.* Queremos invitarte a esta Asamblea para que compartas las inquietudes de los residentes y nos orientes sobre este proyecto.

"Esperando respuesta y acción inmediata a lo aquí solicitado, quedo

"Cordialmente,

"(Fdo.)

"Víctor Cepeda

"Presidente

[Escrito a mano]   "PD: Podemos hacer la limpieza de los solares y conseguir las certificaciones, si hay un compromiso de ustedes en reembolsarnos los gastos incurridos. (Fdo.iniciales)" (Énfasis suplido.) *Exhibit* IX.

([3]) Resolvió que la Sec. 3.15 de la Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2165) era determinante en cuanto disponía que el término de veinte (20) días era jurisdiccional e improrrogable.

de Residentes acudió en revisión al Tribunal Superior, Sala de Carolina. El 25 de octubre de 1993 dicho foro (Hon. Magalie Hosta Modestti, Juez), mediante sentencia, acogió esos fundamentos y confirmó. Expedimos el *certiorari*.([4])

## II

■ *Procede revocar.* La Ley Núm. 170, *supra*, aplica "a todos los procedimientos administrativos conducidos *ante todas las agencias* que no están expresamente exceptuados por el mismo". (Énfasis suplido.) 3 L.P.R.A. sec. 2103. Véase *Ortiz v. Alcaide Penitenciaría Estatal*, 131 D.P.R. 849 (1992). Como tal, A.R.Pᴇ. está incluida. 3 L.P.R.A. sec. 2102(a).

■ A tono con ese mandato legal, en mayo de 1989 entró en vigor el Reglamento de Procedimientos Adjudicativos de A.R.Pᴇ., extensivo "a todos los *procedimientos adjudicativos* conducidos ante la Administración relacionados con: (1)—*Solicitudes de permisos para la construcción, reconstrucción, alteración, ampliación, traslado, demolición y uso de edificios o estructuras; o para el uso y desarrollo de terrenos; o para la instalación de rótulos o anuncios*". (Énfasis suplido.) Sec. 1.04 del Reglamento de Procedimientos Adjudicativos Núm. 3915, Administración de Reglamentos y Permisos, 21 de abril de 1989, pág. 1-1. Dispuso, además, que "[*l*]*a parte adversamente afectada* por una resolución u orden parcial o final podrá, dentro del término de treinta (30) días desde la fecha de la notificación de la resolución u

---

([4]) En su recurso, la Asociación hace los señalamientos siguientes:

"A. ERR[Ó] EL TRIBUNAL DE INSTANCIA, AL APLICAR A LOS RECURRENTES EL TÉRMINO DE 20 D[Í]AS QUE ESTABLECE LA SECCI[Ó]N 3.15 DE LA LEY NÚMERO 170 DEL 12 DE AGOSTO DE 1988 (LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME) 3 LPRA 2165.

"B. ERR[Ó] EL TRIBUNAL DE INSTANCIA, AL APLICAR LO RESUELTO EN *GARCÍA V. ADMINISTRADOR DE DERECHO AL TRABAJO*, 108 DPR 53, AL CASO ANTE NOS, Y CONCLUIR QUE LOS RECURRENTES TUVIERON CONOCIMIENTO SUFICIENTE PARA EJERCERLO OPORTUNAMENTE, DENTRO DEL T[É]RMINO QUE ESTABLECE LA LEY." Petición de *certiorari*, pág. 4.

orden, presentar una moción de reconsideración ...". (Énfasis suplido.) Sec. 21.01 del Reglamento de Procedimientos Adjudicativos, *supra*, pág. 5-2. *"Parte"* es "[t]odo proponente, interventor o aquella persona a quien se dirija específicamente la acción de la Administración". Sec. 2.01(12) del Reglamento de Procedimientos Adjudicativos, *supra*, págs. 1-5–1-6. Bajo la Ley Núm. 170, *supra*, " 'Parte' significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento". 3 L.P.R.A. sec. 2102(j).

■ Naturalmente, la intervención es el mecanismo procesal para que una persona, que no fue parte original en un procedimiento, pueda defenderse de la determinación administrativa. Mediante éste "cualquier persona que tenga un *interés legítimo* en este procedimiento adjudicativo podrá someter una petición por escrito debidamente fundamentada para que se le permita participar". Sec. 4.01. del Reglamento de Procedimientos Adjudicativos, *supra*, pág. 2-2.(⁵)

---

(⁵) Los criterios para conceder una intervención son:

"(1)—Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.

"(2)—Que no existan otros medios en derecho para que el peticionario pueda proteger adecuadamente su interés.

"(3)—Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

"(4)—Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

"(5)—Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.

"(6)—Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.

"(7)—Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento." Sec. 4.02 del Reglamento de Procedimientos Adjudicativos Núm. 3915, Administración de Reglamentos y Permisos, 21 de abril de 1989, pág. 2-3.

## III

El trasfondo procesal fáctico revela que la Asociación de Residentes solicitó reconsiderar a los treinta y ocho (38) días de haberse archivado la notificación de la resolución de A.R.Pe. Si bien el término para reconsiderar es *jurisdiccional,* no podemos olvidar que aplica sólo a quienes son formalmente *"partes".* Y hemos visto que la Asociación de Residentes no lo era, conforme la definición del propio Reglamento de A.R.Pe. Ello explica por qué dicho organismo gubernamental no le notificó formal ni oficialmente.

Aclarado este extremo, resolvemos que no bastaba una supuesta "notificación constructiva" para que comenzara a transcurrir el referido término jurisdiccional. Más allá de la *especulación,* que a guisa de "inferencia" hizo A.R.Pe., nada hay en los autos que revele meridianamente claro que, como cuestión de hecho, la Asociación de Residentes fue notificada.

■ El debido proceso de ley requiere, como regla general, la notificación o citación real y efectiva, ajustada a los preceptos estatutarios aplicables. Como método alterno, la notificación constructiva, incluso por inferencias, es de excepción; se justifica en circunstancias peculiares ausentes en este caso. No podemos permitir que un eslabón de tanta envergadura en el debido proceso de ley tome o adopte una configuración laxa basada en una mera conclusión especulativa de que se tenía conocimiento de la decisión administrativa. Hay una gran diferencia entre saber que se planifica efectuar unas construcciones adicionales y el conocimiento real de los términos exactos de una resolución emitida por A.R.Pe., que por imperativo ha de contener unos apercibimientos sobre los trámites y términos ulteriores jurisdiccionales. Menos extenderse por conjetura que ese conocimiento lo tuviesen los miembros de dicha Asociación de Residentes u otros residentes de la referida urbanización.

La cuestión es crucial. Estos residentes tienen un interés legítimo en el remanente de los terrenos y una expectativa seria sobre el uso y destino de las facilidades vecinales *originales*. Como tales, no podían ser ignorados. Como adquirentes y residentes en la urbanización, indirectamente sufragaron esos terrenos.

No nos convence el argumento de Montebello de que el cambio propuesto es de "poco impacto y trascendencia dentro de uno previamente aprobado por la ARPE [y] *podrá apreciarse lo innecesario de la participación de parte alguna. En modo alguno el desarrollo propuesto alteraría el concepto aprobado ni causaría impacto adverso alguno*, ya que lo que se proponen son unidades de vivienda manteniendo el mismo carácter, densidad y comportamiento". (Énfasis suplido.) Réplica a Petición de *certiorari*, pág. 5. Distinto a ese prisma, por la reducción significativa de las facilidades vecinales y el uso destinado a esos terrenos, estamos ante un cambio de gran impacto y trascendencia para los residentes. Como personas más cercanas, directamente afectadas, tenían derecho a ser oídos; a la postre, a ellos le corresponde velar y defender su inmediato *habitat.*

Por los fundamentos expuestos, *se dictará sentencia revocatoria. Se ordenará a A.R.Pe. que permita la intervención de la Asociación de Residentes y, previa vista evidenciaria, adjudique en reconsideración sus reclamos.*

El Juez Asociado Señor Hernández Denton emitió una opinión de conformidad. El Juez Asociado Señor Rebollo López emitió una opinión concurrente y disidente.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Hernández Denton.

Coincidimos con la opinión del Tribunal en que erró el Tribunal Superior al aplicarle a la Asociación de Residen-

tes de Parque Montebello (en adelante Asociación) el término jurisdiccional que establece la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico para que una parte presente una moción de reconsideración. Como la Asociación nunca fue parte original en el procedimiento seguido por la Administración de Reglamentos y Permisos (en adelante A.R.PE.) para evaluar el proyecto de desarrollo alterno sometido por Montebello Development Corporation (en adelante la Urbanizadora), el término jurisdiccional de la Sec. 3.15 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2165, no le era aplicable.

La decisión que hoy emitimos reafirma y fortalece los derechos que tienen los residentes de las urbanizaciones a que se les notifique adecuadamente sobre la presentación ante A.R.PE. de cualquier proyecto que reduzca o afecte adversamente el área reservada originalmente para facilidades vecinales.

I

La Ley Núm. 25 de 8 de junio de 1962 (23 L.P.R.A. sec. 30b) autoriza a A.R.PE. a requerir ciertas facilidades vecinales mínimas en los desarrollos de urbanizaciones o edificios multipisos. Ésta dispone, en lo pertinente, lo siguiente:

> Por la presente se autoriza a la Administración de Reglamentos y Permisos, a requerir, previo a la aprobación de urbanizaciones y edificios multipisos, las siguientes facilidades vecinales: la construcción de facilidades educativas, culturales, recreativas, comerciales, y cualesquiera otras facilidades que propendan al desarrollo físico, social, moral, religioso y cultural de la comunidad. No se aprobará ningún desarrollo de urbanización, incluyendo edificios multipisos en el que no se cumpla con el Reglamento de Facilidades Vecinales .... 23 L.P.R.A. sec. 30b.

Debido a que estas restricciones aumentan el costo de la construcción, de ordinario los urbanizadores aumentan proporcionalmente los precios de las unidades y, como correctamente afirma la opinión del Tribunal, los compradores indirectamente sufragan esas facilidades. Cuando alguien adquiere una residencia en una nueva urbanización, toma en consideración las facilidades vecinales incluidas, particularmente las áreas verdes y las recreativas. Por eso ellos tienen, como expresa la mayoría, "una expectativa sobre el uso y destino" de éstas que no puede ser ignorada por A.R.Pe. ni por el urbanizador al momento de considerar hacer modificaciones al proyecto original que afecten adversamente las áreas vecinales.

Como resultado de esta legislación, los residentes de esas urbanizaciones han adquirido además un interés legítimo, tanto sobre los terrenos reservados para dichas facilidades, como sobre las estructuras que se construyen en dichos terrenos. Debido a que tienen este interés legítimo sobre las áreas comunes vecinales cuyo uso es restringido por A.R.Pe. al originalmente aprobar el proyecto de urbanización, la urbanizadora tiene el deber de notificarles a los residentes la presentación ante A.R.Pe. de cualquier plan de desarrollo alterno que se considere para esas áreas. Ello garantiza que los residentes sean adecuadamente notificados de cualquier plan que afecte el uso y el destino de las facilidades vecinales.

De solicitarlo los residentes, A.R.Pe. debe celebrar una vista pública en la que se les garantice a todos ellos una oportunidad de conocer los planes alternos y de comparecer a expresar su posición. Una vez informados por la urbanizadora de la acción propuesta, los residentes entonces se convierten en una "parte" en el procedimiento administrativo y tienen derecho a ser notificados por la agencia de la decisión que ésta tome, conforme a lo dispuesto por la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico. Si no son notificados ade-

cuadamente de la acción propuesta es injusto aplicarles los términos jurisdiccionales que establece la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, pues ello tendría el efecto de privarles de su oportunidad de ser oídos tanto en el procedimiento administrativo como en el judicial.

## II

En el caso de autos la Urbanizadora sometió ante A.R.Pe. un plano de desarrollo preliminar alterno que rediseñaba el proyecto en cuestión para la construcción de once (11) unidades de vivienda adicionales. Este cambio iba a reducir sustancialmente el área actualmente reservada para las facilidades vecinales de diez mil setecientos diecinueve punto treinta y cinco (10,719.35) metros cuadrados a seis mil ochocientos veintitrés punto noventa y cuatro (6,823.94) metros cuadrados.

Como los residentes de esa urbanización tenían una expectativa razonable sobre el uso que se le daría al área reservada para facilidades vecinales, y este interés podría ser afectado por el plan alterno, ellos tenían derecho a ser notificados del plan sometido a A.R.Pe. Al solicitar la aprobación del plano preliminar alterno, la Urbanizadora tenía la obligación de informarle a A.R.Pe. quiénes eran las partes afectadas por el proyecto y de notificarle a cada una de ellas sobre el plano. Sin embargo, las más de cien (100) familias residentes en la urbanización en cuestión no fueron adecuadamente notificadas de la presentación ante A.R.Pe. del proyecto para reducir el área restringida. Como no fueron notificados de dicha solicitud, ellos no tuvieron una oportunidad de intervenir en una etapa significativa del procedimiento administrativo. Tampoco fueron notificados formalmente de la decisión de la agencia en la cual se aprobaba el proyecto.

No podemos tolerar el tecnicismo utilizado tanto por

A.R.Pe. como por el Tribunal Superior, de aplicarle a la Asociación el mencionado término jurisdiccional de veinte (20) días que impone la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico a las partes para pedir reconsideración de una resolución administrativa. Si la Asociación nunca fue notificada de la resolución en cuestión es injusto exigirle que cumpla con el referido término jurisdiccional.

En resumen, la Asociación es una parte interesada y como tal el Tribunal Superior tenía que permitirle intervenir en el proceso administrativo llevado ante A.R.Pe. por la urbanizadora. Por ende, procede la revocación del dictamen recurrido y la devolución del caso a la agencia para que celebre una vista pública en la cual los residentes puedan exponer sus posiciones y reclamar sus derechos sobre el destino del área reservada para las facilidades vecinales de su urbanización.

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López.

No obstante concurrir con el resultado a que se llega en la Opinión y Sentencia que el Tribunal emite en el día de hoy en el presente caso, *nos preocupa sobremanera la misma.* Somos del criterio que la Opinión mayoritaria emitida es un vivo ejemplo de una práctica en que el Tribunal *no* debe nunca incurrir, esto es, el de prejuzgar una controversia que no está ante nuestra consideración, de paso intentando ejercer influencia sobre los tribunales inferiores que van a pasar juicio, en primer término, sobre la misma.

I

No hay duda de que el término de treinta (30) días —establecido el mismo por el Reglamento de Procedimientos

Adjudicativos promulgado por la Administración de Reglamentos y Permisos (en adelante A.R.Pe.) al amparo de las disposiciones de su ley habilitadora y de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico— dentro del cual la parte adversamente afectada por una decisión de A.R.Pe. tiene que radicar una moción de reconsideración es uno de carácter jurisdiccional. Igualmente resulta incuestionable que la Asociación de Residentes de Parque Montebello radicó, fuera de dicho término jurisdiccional, su moción de intervención y/o de reconsideración.

Como surge de la Opinión mayoritaria, A.R.Pe. denegó la referida moción de intervención y/o reconsideración por el fundamento específico de que la Asociación tuvo la oportunidad de comparecer ante ellos antes de que transcurrieran los mencionados treinta (30) días. Dicha determinación administrativa está basada exclusivamente en los términos de una carta firmada por el presidente de dicha Asociación; carta dirigida al presidente de la Corporación dueña del proyecto en cuestión.

De una lectura de dicha carta surge claramente que la Asociación citó a, y celebró, una reunión extraordinaria —en "... relación a la construcción de las viviendas que [la dueña del proyecto] piensan realizar próximamente en la urbanización" (*Exhibit* 9)— mucho antes de que el referido término jurisdiccional de treinta (30) días expirara y con anterioridad al día en que, finalmente, la Asociación radicó ante A.R.Pe. su escrito de intervención y/o reconsideración.

*Ahora bien*, de dicha carta *no* surge con claridad el hecho de que la referida Asociación realmente tuviera conocimiento del procedimiento administrativo que se estaba llevando ante A.R.Pe., como tampoco del hecho de que A.R.Pe. hubiera emitido una resolución en el mismo. Es por ello que concurrimos con la Mayoría en el resultado a que ésta llega en el caso. Esto es, que teniendo la Asociación un genuino interés en el asunto y pudiendo dicho in-

terés ser afectado adversamente por la decisión administrativa que, al respecto, tomara A.R.Pe., resulta procedente —por imperativo del debido proceso de ley— darle el derecho a la Asociación a intervenir y ser oída, previa notificación al efecto, en dicho procedimiento en defensa de sus intereses.

## II

Como hemos visto, la controversia ante nos *se limita a lo arriba expuesto*. El Tribunal, sin embargo, *va mucho más lejos*. Mediante el lenguaje utilizado en la Opinión y Sentencia emitida, este Foro "resuelve", *por adelantado*, la controversia principal entre las partes, esto es, de si procede, o no, otorgársele permiso a la compañía dueña del proyecto para construir casas adicionales en terrenos destinados originalmente a "áreas verdes" en la urbanización en controversia; *controversia que todavía no está ante la consideración de este Tribunal.*

Realmente no hay que ser muy perspicaz para poder percatarse uno de la postura desde ahora asumida por el Tribunal, favorecedora la misma de la posición sostenida por la Asociación a los efectos de que no se deben utilizar las áreas verdes existentes para la construcción de casas adicionales en la referida urbanización. Basta con leer frases de la Opinión mayoritaria, pág. 414, tales como que "[e]xiste un apetito voraz de explotar y agotar las reservas de áreas verdes en las zonas urbanas" y a los efectos de que el "progreso, la planificación y la necesidad de desarrollar áreas urbanas no es carta blanca para violar derechos previamente adquiridos por ciudadanos que, aun sin contar con la técnica y afluencia económica de las corporaciones constructoras, poseen un legítimo interés en mantener incólumes áreas verdes de recreación y disfrute comunitario". Íd.

Expresa el refrán popular que "al buen entendedor, con pocas palabras basta". Por medio de éstas, y otras, expresiones el Tribunal envía un claro mensaje, o pretende influenciar, a los jueces de los tribunales inferiores que tendrán que decidir a quién le asiste la razón. *Ello es una práctica, repetimos, en que este Tribunal nunca debe incurrir.* Cabe preguntarse: ¿qué diferencia existe entre esta práctica y la emisión de una opinión consultiva?