ARIEL RIVERA RAMOS, recurrido, *v.* FÉLIX MORALES BLAS, peticionario.

*Número:* CC-1998-30 *Resuelto:* 2 de noviembre de 1999

*Miguel Clar Reyes* y *Roberto Cardona Ubiñas*, abogados del peticionario; *Leonor Porrata-Doria*, abogada del recurrido;

*Everlidys Rodríguez Pacheco*, abogada de la Junta de Planificación.

PER CURIAM:

## I

El Sr. Ariel Rivera Ramos, recurrido (en adelante el señor Rivera Ramos) y/o Wildco Construction (proyectista), presentó ante la Junta de Planificación (en adelante la Junta) una propuesta para la ubicación de un proyecto turístico en el barrio Borinquen, sector marítimo Playuelas, en el Municipio de Aguadilla. Éste consistía en un hotel de veinticinco (25) habitaciones.

El 27 de mayo de 1994 el Sr. Félix Morales Blas, peticionario (en adelante el señor Morales Blas), y otros vecinos del sector Playuelas, entre éstos miembros activos de la Asociación de Pescadores, presentaron una demanda de interdicto provisional y permanente contra el señor Rivera Ramos, la sociedad legal de gananciales compuesta por él y su esposa, la Administración de Reglamentos y Permisos (en adelante A.R.Pe.) la Junta y el Estado Libre Asociado de Puerto Rico (en adelante el E.L.A.).[1] Alegaron que durante el trámite administrativo se les negó el derecho a participar en las vistas públicas relacionadas con la consulta de ubicación. Por lo tanto, le solicitaron al extinto Tribunal Superior, Sala de Aguadilla, que emitiera una orden de paralización del proyecto del señor Rivera Ramos.

El 8 de junio de 1994, el tribunal declaró con lugar la solicitud de *injunction* preliminar y le ordenó al señor Rivera Ramos que paralizara las obras hasta que concluyera el trámite administrativo.

De otra parte y antes de la presentación de la demanda de interdicto provisional y permanente, el Sr. Aníbal Ace-

---

[1] El resto de los demandantes eran: el Sr. Manuel Román Soto, la Sra. Rogelia Badillo Blas, la Sra. María Blas Carrero, el Sr. Ramón Blas, el Sr. Felipe Sanabria, la Sra. Yolanda Blas y el Sr. Ray Alma Cortés.

vedo Vilá (en adelante el señor Acevedo Vilá) le había enviado una carta a la entonces presidenta de la Junta, la Sra. Norma Burgos, en la cual le solicitaba una explicación sobre cómo se atenderían las preocupaciones de los ciudadanos que se oponían a la aprobación del proyecto.

El 24 de junio de 1994, la Junta aceptó como interventores al señor Morales Blas y al señor Acevedo Vilá. Posteriormente, procedió a celebrar una vista pública para considerar los méritos del proyecto y los planteamientos de las partes interesadas. El señor Morales Blas y otras personas, como el Sr. Rafael Rodríguez, Senador (representado por la Sra. Sylvia Rosado Cardona), el Sr. Diego López, miembro de la Asamblea Municipal de Aguadilla, y un representante del Departamento de Agricultura comparecieron a la audiencia. En ésta tuvieron la oportunidad de expresar sus posturas en torno al proyecto propuesto.

Tras escuchar a las partes, la Junta dejó en suspenso todo trámite ulterior hasta tanto el señor Rivera Ramos le sometiera información adicional y se *recibieran los comentarios de varias agencias*, entre éstas, la Compañía de Turismo, la Autoridad de Energía Eléctrica, el Departamento de Transportación y Obras Públicas, el Departamento de Recursos Naturales y Ambientales, la Autoridad de Carreteras y Transportación y el *Fish and Wildlife Service* (en adelante FWS).

De los documentos que obran en autos surge que tanto el proyectista como la Junta requirieron de FWS sus comentarios sobre el proyecto propuesto. En específico, le solicitaron asesoramiento con respecto a las posibles especies en peligro de extinción. FWS respondió oportunamente y expuso sus comentarios sobre los efectos potenciales del proyecto sobre la fauna del sector.(²)

---

(²) El 9 de agosto de 1994 el Fish and Wildlife Service (en adelante FWS) le envió una carta a la Junta de Planificación (en adelante la Junta), en la cual indicó lo siguiente, en su parte pertinente:

"The Aguadilla area falls within the range of the federally endangered Puerto Rican boa,... and harbors resting habitat for three sea turtle species [...]. The pre-

Mediante resolución de 21 de diciembre de 1995, la Junta aprobó la consulta para la ubicación del proyecto turístico. Inconforme, el *señor Morales Blas* y los vecinos y pescadores opositores presentaron un recurso de revisión judicial ante el Tribunal de Primera Instancia, Sala Superior de Aguadilla.(³) En síntesis, alegaron que la Junta erró al apreciar la prueba presentada; que el señor Rivera Ramos incurrió en infracciones a los reglamentos de la agencia y que durante la consulta de ubicación se violó el debido proceso de ley.

El foro de instancia desestimó el recurso de revisión judicial con el fundamento de falta de jurisdicción. Concluyó que dicho recurso no se le notificó a la Junta dentro del

---

sence of habitat for theses [sic] species should be determined and possible effects on the species should be evaluated by the applicant.

"We recommend that the sighting permit not be issued until the evaluation is completed ...."

Posteriormente, en su carta de 10 de marzo de 1995, FWS señaló lo siguiente:

"Mr. Pedro Alarcón from Wildco Construction, in a letter of March 3, 1995, requested comments from this office on the above project. The Service provided comments to the Planning Board on August 9, 1994, and mentioned that the Aguadilla area fell within the range of federally endangered Puerto Rican boa and harbored nesting habitat for sea turtles. The Service recommended that the applicant determine the presence of habitat for these species at the proposed site and evaluate possible effects on the species. The Service did not received any response to the letter.

"In September, 1994, Service biologists visited the proposed site and determined that the area did not contain Puerto Rican boa habitat. However, we believe that the lights from the proposed hot[e]l could be observed, directly or indirectly, from the beach. Artificial lights may result in misorientation [sic] or disorientation, and mortality, of female sea turtle adults and hatchlings.

"Several kinds of features and lights can be incorporated to the construction plans of the proposed hotel in order to minimize impacts on sea turtles.

"During a telephone conversation with the applicant on March 3, 1995, we recommended a meeting in order to provide guidance, literature, references and examples that can be used in the development of a lighting plan to be incorporated into the design of the project. A meeting is schedule for March 21, 1995."

Ignoramos si la reunión pautada se llevó a cabo.

Vale la pena mencionar que la resolución de la Junta hace referencia a las recomendaciones que se recibieron de distintas entidades, tales como el Departamento de Agricultura, la Autoridad de Acueductos y Alcantarillados, y la Autoridad de Carreteras.

(³) La revisión judicial se solicitó antes de que entrara en vigor la Ley Núm. 248 de 25 de diciembre de 1995 (4 L.P.R.A. secs. 22i-22k, 22n-22p, 23f y 23n), la cual enmendó el Plan de Reorganización Núm. 1 de la Rama Judicial de 1994, conocido como la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22 *et seq.*). Por lo tanto, el foro competente para entender en el recurso era el Tribunal Superior.

término provisto en la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*).

Oportunamente, el *señor Morales Blas* recurrió al Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito) mediante un recurso de apelación, el cual fue acogido como uno de *certiorari* por ser el apropiado. Solicitó que se revocase la sentencia mediante la cual el foro de instancia se declaró sin jurisdicción.

El foro apelativo resolvió que de un examen de los autos surgía que la notificación a la Junta se hizo dentro del término provisto en la L.P.A.U.[4] No obstante, desestimó el recurso de *certiorari*, pero por un fundamento distinto. Concluyó que carecía de jurisdicción porque el señor Morales Blas y los demás opositores omitieron notificar el *certiorari* a todas las partes interesadas; en específico, al señor *Morales Blas* y al señor Acevedo Vilá, interventores.

Inconforme, el señor Morales Blas recurre ante nosotros con los siguientes señalamientos de error:

1. Erró el Honorable Tribunal Apelativo al adscribirle capacidad para surtir efectos legales a una Resolución de la Honorable Junta de Planificación que no le fue notificada a todas las partes involucradas en el procedimiento administrativo.
2. Erró el Honorable Tribunal Apelativo al utilizar como fundamento desestimatorio el hecho de que no se le había notifi-

---

[4] Le asiste la razón. La Junta emitió su resolución el 21 de diciembre de 1995. Oportunamente, el señor Morales Blas y los demás opositores presentaron una solicitud de reconsideración. La Junta la denegó y archivó en autos la copia de la notificación el 5 de febrero de 1996. El 5 de marzo de 1996 el señor Morales Blas presentó el recurso de revisión judicial ante el foro de instancia. De los documentos que obran en los autos surge que el 6 de marzo de 1996, último día hábil para presentar el recurso, el señor Morales Blas procedió a notificar al abogado de la Junta por correo certificado. No obstante, el foro de instancia desestimó el recurso, porque resolvió que la Junta no fue notificada hasta el 12 de marzo de 1996, día en que el abogado recibió la notificación.

En el caso que hoy nos ocupa, la Junta fue notificada el día en que se realizó el depósito en el correo. Por lo tanto, resulta forzoso concluir que el recurso de revisión judicial fue oportunamente notificado y erró el Tribunal de Primera Instancia al desestimarlo por falta de jurisdicción.

cado el escrito titulado [a]pelación a la parte autora del mismo, es decir, Félix Morales Blas.

3. Erró el Honorable Tribunal Apelativo al utilizar como fundamento desestimatorio el hecho de que no se le había notificado el escrito titulado [a]pelación al Honorable Aníbal Acevedo Vilá por cuanto entre éste y la parte autora del escrito existe una perfecta coincidencia de intereses en el procedimiento administrativo.

El 12 de mayo de 1998 concedimos un término a la Junta para que mostrara causa por la cual no se debía expedir el *certiorari* y revocar la resolución del Tribunal de Circuito de Apelaciones. Le indicamos que debía discutir los asuntos siguientes:

1) si las siguientes personas y agencias son y fueron *parte o interventores* en la Consulta [de ubicación] ..., según [dichos] términos ... están definidos en la Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62 *et seq.*; en la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.* y en el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244 de 31 de mayo de 1995:

 a) Departamento de Agricultura de Puerto Rico;

 b) United States Department of the Interior, Fish and Wild Service;

 c) Hon. Rafael Rodríguez y

 d) Hon. Diego López

2) si las personas y agencias mencionadas en el inciso anterior fueron notificadas de la resolución emitida por la Junta de Planificación...

3) si en el expediente administrativo de la Junta hay constancia de otras personas que fueron o son parte del proceso [administrativo] ... a las cuales la Junta no les haya notificado la resolución...

4) si la certificación al final de la resolución emitida por la Junta, en la cual se certifica haber notificado a las partes de la resolución está completa y es correcta y

5) si el Hon. Acevedo Vilá en efecto se puede considerar como un *interventor* según la definición de este término en las leyes citadas anteriormente, tomando en cuenta su participación en el proceso de la Consulta [de ubicación]....

Con el beneficio de la comparecencia de ambas partes resolvemos sin ulteriores procedimientos.

## II

El señor Morales Blas alegó que la Junta no le notificó su resolución a todas las partes involucradas en el proceso administrativo.

De entrada, es preciso señalar que el señor Morales Blas no hizo dicho señalamiento ni ante el Tribunal Superior ni ante el foro apelativo, sino que lo presenta por primera vez ante nosotros. Como justificación para ello argumentó que no se percató del error en las notificaciones, porque la Junta omitió proveerle la identidad y la dirección de las partes interesadas o afectadas a las que había remitido su resolución. Por tratarse de un señalamiento que objeta la jurisdicción del entonces Tribunal Superior para entender en el recurso de revisión judicial, vamos a considerarlo.

El señor Morales Blas alegó que la Junta omitió notificarle su resolución: (i) al señor Rafael Rodríguez, Vicepresidente de la Comisión de Turismo en el Senado, (ii) al señor Diego López, asambleísta municipal de Aguadilla, (iii) al Departamento de Agricultura y (iv) a FWS. De los documentos que acompañan la moción en cumplimiento de orden surge que el señor Rodríguez, el señor López y el Secretario de Agricultura fueron notificados de la resolución. Por lo tanto, es innecesario que nos expresemos sobre el particular.

En su escrito en cumplimiento de orden, la Junta indicó que del expediente administrativo no surgía que FWS fuese notificado. No obstante, argumentó que el Departamento de Agricultura y FWS participaron en el procedimiento adjudicativo como *agencias consultoras*. Es decir, que se les permitió participar solicitándole sus comentarios, pero no comparecieron como partes en el sentido

adversativo. Por lo tanto, no era preciso notificarles la resolución.

## III

Para determinar si la Junta venía obligada a notificar su resolución a FWS es menester que analicemos conjuntamente las disposiciones de la L.P.A.U. y las del Reglamento de la Junta.

 La L.P.A.U. contiene un cuerpo de reglas aplicables a todos los procedimientos administrativos conducidos ante las agencias que no hayan sido exceptuados por ley. Véanse: 3 L.P.R.A. sec. 2103; *Const. I. Meléndez, S.E. v. A.C.*, 146 D.P.R. 743 (1998); *Asoc. Residentes v. Montebello Dev. Corp.*, 138 D.P.R. 412 (1995). El Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244 de 31 de mayo de 1995 (en adelante el Reglamento) por su parte, aplica a todos los procedimientos adjudicativos que se ventilen en la Junta. Los preceptos de éste deben interpretarse liberalmente para cumplir con los propósitos de la L.P.A.U. Secs. 1.04–1.05 del Reglamento, *supra*, págs. 1.1–1.2.

 La L.P.A.U. define el término *parte* de una forma abarcadora. Veamos:

...toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma.... 3 L.P.R.A. sec. 2102(j).

Sobre dicho concepto, el Prof. Demetrio Fernández nos indica que:

[p]ara fines de la ley pueden considerarse como partes los siguientes: (1) a quien se dirija la acción, (2) la agencia a quien se le dirija la acción, (3) el interventor, (4) quien haya radicado [sic] una petición para revisión o cumplimiento de orden y (5) quien haya sido designado como tal en el procedimiento. D.

Fernández Quiñones, *Derecho administrativo y la Ley de Procedimiento Administrativo Uniforme*, Colombia, Ed. Forum, 1993, pág. 160.

El profesor Fernández añade que la definición citada "es clara en lo que respecta a que el promovente o promovido de una acción son partes, ... [e]l problema surge con relación a los que puedan reclamar ser partes y no estén ubicados en las categorías de ser promoventes o promovidos". Fernández Quiñones, *op. cit.*, pág. 160.

■ A pesar de lo abarcador del concepto, identificar adecuadamente a las *partes* resulta indispensable para poder recurrir de una determinación administrativa, ya sea mediante solicitud de reconsideración o presentando un recurso de revisión judicial. Ello en vista de que la notificación a la agencia y a todas las partes es de carácter jurisdiccional.[5]

■ Este Tribunal ha reconocido que existen circunstancias en las que la determinación de quién es *parte* en un proceso administrativo resulta una labor compleja. Recientemente indicamos que:

> [e]n un procedimiento de subasta, la determinación de quién debe ser considerado una parte es algo relativamente sencillo en comparación a otros trámites administrativos que pueden presentar mayor dificultad para catalogar la condición de "parte" de una persona que ha comparecido ante una agencia administrativa. *Const. I. Meléndez, S.E. v. A.C.*, supra, pág. 749.

Por lo tanto, hemos señalado que para facilitar la tarea de identificar a las *partes*, es menester prestar cuidadosa

---

[5] La importancia de la notificación está plasmada en el propio Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 5244 de 31 de mayo de 1995 (en adelante el Reglamento), el cual dispone que:

"... La Oficina del Secretario notificará, por correo, *a las partes* cuyas direcciones obren en el expediente de la consulta. En la resolución se advertirá a la parte afectada de su derecho a solicitar una reconsideración dentro del término de veinte (20) días a partir de la fecha del archivo en autos de la notificación." (Énfasis suplido.) Sec. 9.00 del Reglamento, *supra*, pág. 9.1.

atención al contenido de la disposición administrativa final. *Const. I. Meléndez, S.E. v. A.C.*, supra.

Con estos pronunciamientos en mente, examinemos qué dispone el Reglamento sobre las consultas de ubicación y las personas que pueden participar en éstas.

■ La consulta de ubicación es:

> [el t]rámite mediante el cual la Junta de Planificación evalúa y decide según estime pertinente, sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas pero que las disposiciones reglamentarias proveen para que se consideren. En áreas no zonificadas incluye propuestos usos de terrenos que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social pudiesen afectar significativamente el desarrollo de un sector ... Sec. 2.00(6) del Reglamento, *supra*, pág. 2.3.

■ El Reglamento regula el procedimiento que se ha de seguir y los elementos de juicio que la Junta debe considerar al tramitar y resolver las consultas de ubicación. Dispone, además, que éstas pueden considerarse mediante la celebración de vistas privadas o públicas. En las audiencias públicas se permite la participación de aquellas personas interesadas en expresarse en torno al proyecto ante la consideración de la agencia. En consecuencia, la consulta de ubicación es uno de los procesos administrativos en los cuales la tarea de identificar adecuadamente a las partes, según dicho término está definido por la L.P.A.U., presenta dificultades. Véase la Sec. 8.02 del Reglamento, *supra*, pág. 8.2.

■ Por otro lado, el Reglamento dispone expresamente que al considerar una consulta de ubicación la Junta puede solicitar asesoramiento tanto a entidades públicas como privadas. El precepto pertinente reza de la forma siguiente:

> La Junta de Planificación consultará, cuando lo considere necesario, a cualesquiera de los organismos gubernamentales, co-

misiones locales de planificación y otras entidades públicas y privadas que de alguna manera tengan relación con los proyectos bajo estudio. Se requerirá a las partes consultadas que notifiquen copia de sus comentarios a la parte proponente y a las partes opositoras, si las hubiere, al momento de ofrecer sus comentarios. La parte interesada tendrá diez (10) días calendario a partir de la fecha de notificación de los comentarios para responder a los mismos. Véase la Sec. 7.01 del Reglamento, supra, págs. 7.1–7.5.

■ Del lenguaje del precepto citado surge con meridiana claridad que las entidades consultadas por la Junta no caen específicamente bajo la definición de *parte* contenida en la L.P.A.U. No cabe duda de que éstas participan en las consultas de ubicación, pero no constituyen la parte promovente, ni la promovida. Tampoco son interventores o *amicus curiae.* Su participación consiste más bien en ilustrar a la Junta, en ayudarla a llevar a cabo su función de evaluar las consultas de ubicación y considerar la conveniencia o los perjuicios de los proyectos propuestos.

Conforme surge de los documentos que obran en autos, FWS participó en la consulta de ubicación a requerimiento tanto de la Junta como del proponente del proyecto. Dicha participación se limitó únicamente a brindar asesoramiento para evitar que el proyecto turístico afectase excesivamente las especies del sector Playuelas. Entendemos que dicha participación es insuficiente para concluir que la Junta venía obligada a notificarle su decisión, como si se tratase de una parte.

Es menester señalar que durante el transcurso del proceso administrativo objeto de la presente controversia, la Junta consultó a otras agencias y entidades, entre éstas, el Departamento de Agricultura y la Compañía de Turismo, las cuales emitieron sendas recomendaciones. De los documentos que obran en autos surge que la Junta notificó de su resolución a algunas de éstas. No obstante, eso no significa que estaba obligada a hacerlo.

Abona a nuestra conclusión el hecho de que tras analizar el Reglamento no hemos encontrado precepto alguno

que indique que una vez una entidad participa en una consulta de ubicación mediante la expresión de sus comentarios o recomendaciones, sea menester que la Junta le notifique sus resoluciones.

## IV

Como segundo señalamiento, el señor Morales Blas alegó que el Tribunal de Circuito erró al desestimar el recurso de *certiorari* con el fundamento de que el peticionario omitió notificarlo a todas las partes, en específico al señor Morales Blas y al señor Acevedo Vilá.

Según señaláramos anteriormente, el señor Morales Blas, junto a otros miembros de la Federación de Pescadores, fue precisamente la persona que interpuso el recurso de *certiorari* ante el Tribunal de Circuito. Obviamente, no podemos exigirle que se notificara a sí mismo. Menos aún, concluir que la falta de notificación constituyó un error que privó de jurisdicción al Tribunal de Circuito. Aparentemente por inadvertencia, dado el gran número de personas naturales y jurídicas que participaron en el proceso administrativo, el foro apelativo concluyó que se omitió notificar al señor Morales Blas, sin percatarse de que fue él, precisamente, quien interpuso el *certiorari*.

## V

Por último, el señor Morales Blas alegó que el foro apelativo erró al desestimar el recurso de *certiorari* por el fundamento de que se obvió notificarlo al señor Acevedo Vilá, aceptado como interventor por la Junta. Argumentó que la fugaz comparecencia del señor Acevedo Vilá en el procedimiento administrativo fue verificada a petición suya y que existía tal identidad de intereses entre los opositores al proyecto y éste, que era innecesario notificarle.

En nuestra orden de mostrar causa le solicitamos a la

Junta que argumentase si al señor Acevedo Vilá se le puede considerar un interventor, *tomando en cuenta su participación en el proceso de la consulta de ubicación.* La Junta ha comparecido; sus argumentos no nos persuaden.

█ Sabido es que "la intervención es el mecanismo procesal para que una persona, que no fue parte original en un procedimiento, pueda defenderse de la determinación administrativa". *Asoc. Residentes v. Montebello Dev. Corp.,* supra, pág. 420.

█ La L.P.A.U., por su parte, define *interventor,* como:

> ... aquella persona que no sea parte original en cualquier procedimiento adjudicativo que la agencia lleve a cabo y que haya demostrado su capacidad o interés en el procedimiento. 3 L.P.R.A. sec. 2102(e).

█ El Reglamento define *interventor* de forma idéntica a la L.P.A.U. Sec. 2.00(11) del Reglamento Núm. 5244, *supra.* De lo anterior resulta forzoso concluir que para efectos de la L.P.A.U., un interventor es *parte* en el procedimiento administrativo ventilado ante la Junta y, como tal, debe ser notificado de todas sus resoluciones.[6]

█ La L.P.A.U. dispone, además, que las solicitudes de intervención deben estar *debidamente fundamentadas.* Veamos:

> Cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia *podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento.* La

---

[6] La Sec. 3.14 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), 3 L.P.R.A. sec. 2164, dispone, en lo pertinente, que:

"La agencia deberá notificar a las partes la orden o resolución a la brevedad posible, por correo y deberá archivar en autos copia de la orden o resolución final y de la constancia de la notificación. Una parte no podrá ser requerida a cumplir con una orden final a menos que dicha parte haya sido notificada de la misma."

agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración entre otros los siguientes factores:

(a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.

(b) Que no existan otros medios en derecho para que el peticionario pueda proteger adecuadamente su interés.

(c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.

(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

(f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.

La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención. Sec. 3.5 de la L.P.A.U., 3 L.P.R.A. sec. 2155.

■■■ De lo anteriormente expuesto se puede colegir que la persona interesada en intervenir en un proceso administrativo debe tener un interés legítimo en éste y *presentar una solicitud debidamente fundamentada a esos efectos*. Ello en vista de que en los procedimientos administrativos, en específico, durante las audiencias públicas para considerar las consultas de ubicación, por lo general se permite la participación de aquellas personas que desean exponer sus posturas con respecto a algún proyecto propuesto, pero que no necesariamente son interventores ni partes.[7] Sobre la intervención en procesos administrativos, señala el profesor Fernández:

Antes de considerar la cuestión formal de la intervención es necesario señalar que las personas interesadas pueden partici-

_____

[7] El Reglamento dispone que: "[p]odrá permitirse la participación en una vista pública a cualquier persona interesada que solicite expresarse sobre el asunto en consideración." Sec. 8.02 del Reglamento, supra, pág. 8.2.

par de diferentes maneras. Pueden ser testigos a requerimiento de la agencia o de las partes, suplir evidencia documental, participar en calidad de *amicus curiae* y que se les permita presentar un argumento oral. Existe una diferencia esencial entre meramente ser participante o interventor. La función del participante se limita al papel que ha solicitado desempeñar, es decir, ser testigo, "amigo de la corte", suplir evidencia documental o prestar una argumentación de carácter oral. Por el contrario, la solicitud de interventor va más lejos y le asegura una participación más plena en el procedimiento, la cual se encuentra avalada por el reconocimiento de que posee un derecho. Fernández Quiñones, *op. cit.*, pág. 161.

La Regla 21.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, regula el mecanismo de la intervención y, al igual que la L.P.A.U., dispone que la persona interesada en participar en un pleito debe presentar una solicitud al efecto.([8]) Hemos indicado que a pesar de que la citada Regla 21.1 debe interpretarse liberalmente, ello no equivale a "sancionar la intervención indiscriminada ni a sentar el principio de que toda duda posible debe resolverse a favor de la intervención". *Chase Manhattan Bank v. Nesglo, Inc.*, 111 D.P.R. 767, 770 (1981). Debemos analizar la participación del señor Acevedo Vilá en el proceso administrativo para poder determinar si en realidad éste puede considerarse un interventor.

De acuerdo con los documentos que obran en autos, la participación del señor Acevedo Vilá se circunscribió a remitir una carta a la Junta, haciéndose eco de las preocupaciones del señor Morales Blas y de los demás opositores al proyecto. Solicitó, además, el expediente relacionado con la consulta de ubicación. En la referida carta el señor Acevedo Vilá *no solicitó que se le aceptase como interventor.* De

---

([8]) La Regla 21.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone lo siguiente:

"Mediante oportuna solicitud, cualquier persona tendrá derecho a intervenir en un pleito (a) cuando por ley o por estas reglas se le confiere un derecho incondicional a intervenir; o (b) cuando el solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pudiere de hecho quedar afectado con la disposición final del pleito."

los autos tampoco surge que éste hubiese comparecido a las vistas públicas sobre la consulta de ubicación. Ciertamente, éste participó en el proceso administrativo, pero su rol en el mismo no le confirió el carácter de interventor.

El caso del señor Acevedo Vilá es diferente al del señor Morales Blas. A pesar de que este último no solicitó intervenir formalmente, resulta obvio que tenía interés en el proceso administrativo, como vecino del sector en el cual se iba a construir el proyecto turístico. Incluso, el señor Morales Blas presentó una demanda de *injunction* en la que alegó que a él y a otros vecinos del sector se les privó de su derecho a participar en las vistas públicas relacionadas con la consulta de ubicación. De esa forma quedó efectivamente demostrado su interés en intervenir, en ser parte del proceso.

Por lo antes expuesto, entendemos que a pesar de que la Junta decidió aceptar al señor Acevedo Vilá como interventor, *dadas las circunstancias particulares del caso que hoy nos ocupa,* no podemos considerarlo, en efecto, como tal.

*Concluimos que el Tribunal de Circuito erró al desestimar el recurso de "certiorari" por falta de jurisdicción debido a que se omitió notificar al señor Acevedo Vilá. Por los fundamentos antes expuestos, revocamos la resolución del Tribunal de Circuito de Apelaciones y devolvemos el caso a dicho foro para lo que estime pertinente.*(⁹)

El Juez Asociado Señor Rebollo López no intervino.

---

(⁹) Según ya expresáramos, el recurso de revisión judicial se presentó ante el extinto Tribunal Superior. Posteriormente, entró en vigor la Ley Núm. 248, *supra,* la cual le confirió competencia al Tribunal de Circuito de Apelaciones para entender en los recursos de revisión judicial. Por lo tanto, procede la devolución del caso de autos a dicho tribunal para que continúen los procedimientos.