EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Comisión de Ciudadanos al Rescate de Caimito, Inc.<br><br>Peticionarios<br><br>vs.<br><br>G.P. Real Property S.E. y Otros<br><br>Recurridos | Certiorari<br><br>2008 TSPR 105<br><br>174 DPR _____ |

Número del Caso: CC-2005-96

Fecha: 4 de junio de 2008

Tribunal de Apelaciones:

> Región Judicial de San Juan, Panel III

Juez Ponente:

> Hon. Luis Rivera Román

Abogados de la Parte Peticionaria:

> Lcdo. Juan Vilella Janeiro
> Lcdo. Antonio Rosselló Rentas
> Lcda. Marta Elisa González Yglesias

Abogado de la Parte Recurrida:

> Lcdo. Edgardo R. Rodríguez Cardé

Oficina del Procurador General:

> Lcdo. Guillermo A. Mangual Amador
> Lcdo. Reinaldo Camps Del Valle
> Procurador General Auxiliar

Materia: Injunction Preliminar y Permanente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Comisión de Ciudadanos al
Rescate de Caimito, Inc.                        *Certiorari*
        Peticionarios


        v.                              CC-2005-96

G.P. Real Property S.E. y
otros
        Recurridos


Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA


En San Juan, Puerto Rico, a 4 de junio de 2008.

Debemos resolver si una persona que ha intentado participar activamente en un proceso adjudicativo ante una agencia debe ser reconocida como "parte" en dicho proceso cuando tiene un interés legítimo que puede ser afectado por la determinación de la agencia y, además, ha intentado ejercer su derecho a participar efectivamente durante todo el procedimiento, de forma tal, que la única razón por la que no ha logrado dicha participación ha sido la propia arbitrariedad de la agencia. Resolvemos que en estas circunstancias la persona es parte en el proceso.

I

Mediante sentencia sumaria parcial el Tribunal de Primera Instancia denegó el remedio de injunction preliminar y permanente solicitado por la peticionaria, Comisión de Ciudadanos al Rescate de Caimito (Comisión de Ciudadanos o Comisión), en su demanda contra los recurridos, G.P. Real Property S.E., Gerardo I. Pérez Rivera, Junta de Planificación de Puerto Rico y Administración de Reglamentos y Permisos (ARPE). El Tribunal de Apelaciones confirmó ese dictamen y la Comisión de Ciudadanos solicita la revocación de la sentencia del foro apelativo. Según surgen del expediente, los hechos no controvertidos son los que exponemos a continuación.

El 1 de junio de 1999, el señor Gerardo I. Pérez Rivera (el proyectista) sometió ante la Junta de Planificación una consulta de ubicación sobre el proyecto residencial Paseo del Monte, el cual consiste de 144 unidades familiares localizadas en el sector Caimito de Río Piedras. El 3 de febrero de 2000, la Junta de Planificación notificó a las partes interesadas, entre éstas la Comisión de Ciudadanos, sobre la aprobación de dicha consulta. La Comisión solicitó reconsideración alegando que era necesario celebrar una vista pública, pero la agencia denegó su pedido, la Comisión de Ciudadanos no solicitó revisión judicial y la aprobación de **la consulta de ubicación advino final y firme.**

Posteriormente, el proyectista sometió el proyecto ante ARPE y esa agencia aprobó el anteproyecto propuesto el 21 de agosto de 2000, sin notificar de ello a la Comisión de Ciudadanos. La aprobación del anteproyecto tenía vigencia de un año; antes de transcurrir ese término el proyectista solicitó una prórroga.

En carta fechada el 1 de agosto de 2001, pero presentada ante ARPE el 31 de julio 2001, la Comisión de Ciudadanos se opuso por derecho propio a la solicitud de prórroga presentada por el proyectista en este caso. En su oposición la Comisión alegó, entre otras cosas, que tiene derecho a participar en la confección de un modelo de desarrollo que le permita a la Comunidad de Caimito superar las dificultades que enfrenta y a tener voz en los asuntos que afectan a esa comunidad. La Comisión de Ciudadanos notificó esta carta al proyectista. El 8 de agosto de 2001, en contestación a dicha carta, ARPE le comunicó que tomaría en consideración sus alegaciones en el proceso adjudicativo del proyecto propuesto. Específicamente, ARPE expresó lo siguiente:

> Con relación a su carta radicada el dia [sic] 31 de julio de 2001, le indicamos que hemos recibido la misma y la tendremos en consideración **en cuanto al proceso adjudicativo del caso antes mencionado.**
> Actualmente la solicitud de prórroga ha sido objetada para requerir que se presente el endoso del Municipio de San Juan. (Énfasis nuestro).[1]

---

[1] El 17 de abril de 2001, **como parte de un proceso adjudicativo distinto al proceso del proyecto en controversia**, la peticionaria había solicitado al administrador de ARPE que se le reconociera como parte interventora en todos los proyectos y casos pendientes o

Sin embargo, el 24 de agosto de 2001 la agencia concedió la prórroga solicitada por el proyectista sin notificar de ello a la Comisión de Ciudadanos.

El 29 de octubre de 2001, la Comisión de Ciudadanos solicitó por derecho propio que se transfirieran los derechos de desarrollo del proyectista y que se archivara la consideración del proyecto. **Específicamente, adujo que la agencia le estaba negando su participación en el proceso adjudicativo del proyecto propuesto.** Esta carta fue notificada al proyectista.[2]

El 7 de marzo de 2002 ARPE aprobó el permiso de urbanización del proyecto propuesto sin notificar a la Comisión de Ciudadanos. El 31 de enero de 2003 la Comisión de Ciudadanos nuevamente envió una carta por derecho propio a ARPE solicitando que se revocara la aprobación del anteproyecto por no habérsele permitido

que se presentaran en esa agencia relacionados al barrio Caimito. En respuesta a esa petición, el 9 de agosto de 2001, mediante resolución, ARPE reconoció a la peticionaria como interventora en los "asuntos y proyectos de desarrollos de construcción dentro de las inmediaciones del sector Caimito del Barrio Río Piedras y muy en particular al caso 97-17-A-601-CPCU y otros relacionados".

[2] En su carta del 29 de octubre de 2001 la Comisión de Ciudadanos expresó lo siguiente:

> Considerar proyectos con servicio expreso en ARPE y a espaldas de las comunidades puede ser una medida adecuada para el proponente pero no una medida justa con las comunidades de escasos recursos por negarnos la debida participación. El deber primario de la agencia pública no es solo [sic] con los desarrolladores.

participar en el proceso en contravención a su derecho al debido proceso de ley. La Comisión de Ciudadanos notificó esta carta al proyectista.[3]

El 24 de noviembre de 2003 la Comisión de Ciudadanos presentó una demanda de injunction preliminar y permanente en la que solicitó al Tribunal de Primera Instancia que paralizara la construcción del proyecto propuesto. Además, solicitó que se revocaran los permisos otorgados por la Junta de Planificación y ARPE, y que se le ordenara a la Junta de Planificación atender el reclamo del Departamento de Educación de manera que los terrenos en controversia se destinaran a la construcción de una escuela en la comunidad de Caimito. Ese reclamo surge de una carta enviada el 15 de octubre de 2003 por

---

[3] En esa comunicación la Comisión de Ciudadanos le expresó a ARPE lo siguiente:

> Hemos reclamado a las autoridades correspondientes que esos terrenos se reserven para la reconstrucción y ampliación de los servicios educativos que recibe la Comunidad bicentenaria de Caimito. Así se había prometido décadas antes.
> Para su conocimiento, luego de arduas gestiones, el 7 de noviembre de 2002, junto con otros líderes de la comunidad, facilitamos la información, justificación y disposición al Honorable Secretario de Educación sobre la deseabilidad de planificar y construir la misma para brindar los servicios educativos que nuestra comunidad amerita y merece.
> Sin embargo, nos ha llegado información de que la agencia que Usted dirige, alegadamente expidió un anteproyecto de construcción **sin nuevamente reconocernos la intervención que nuestra organización ostenta.**
> **Es por ello que solicitamos que se revoque la autorización por no honrarse el debido proceso. Igualmente solicitamos se extienda reconocimiento a la intención legislativa para utilizar para fines públicos esos terrenos.** (Énfasis nuestro).

el entonces Secretario del Departamento de Educación, señor César A. Rey Hernández, a la Junta de Planificación. Indica el Secretario en su carta que los terrenos del proyecto propuesto deben ser utilizados para la ampliación de la Escuela Inés María Mendoza o para la construcción de una escuela elemental o superior, ya que la comunidad de Caimito necesita mejorar sus servicios educativos y las plantas físicas donde se proveen.[4]

---

[4] La carta del Secretario de Educación del E.L.A., señor César A. Rey Hernández, informó a la Junta de Planificación lo siguiente:

La comunidad de Caimito, a través de la Comisión de Ciudadanos al Rescate de Caimito, ha estado realizando numerosas gestiones para conseguir que **se construya una Escuela Superior en los terrenos adyacentes a la Escuela Inés María Mendoza**, del Distrito Escolar de San Juan II.

A manera de puntualización quiero reiterar nuestro propósito e intenciones sobre este asunto, según lo consignamos el 12 de noviembre de 2002 al Hon. Ferdinand Pérez Román, Presidente de la Comisión de Desarrollo Urbano y de Vivienda de la Cámara de Representantes. En efecto, **el Departamento de Educación endosa un posible proyecto de construcción en el área**, en tanto en cuanto la Honorable Comisión concluya que existe una necesidad comprobada y, lógicamente, identifique los fondos necesarios para completarlo.

En este sentido, y como asunto vinculado a este tema, es pertinente señalar que la Escuela Inés M. Mendoza fue objeto de una evaluación por parte del Arquitecto Rafael Reyes Navarro, de la Constructora Trópico. El Arquitecto sugirió la elaboración de un Plan de Condiciones Existentes del Plantel, y que se evalúen otras alternativas a nivel de un plan maestro que considere, desde el rediseño de estructuras hasta la remoción y reconstrucción de algunas facilidades. **Es muy posible que la estructura actual necesite mucho más que intervenciones sencillas o remediales, pues sus arreglos podrían ser más abarcadores y complejos.**

**Ante estas realidades, es <u>imprescindible</u> que se separen los terrenos adyacentes para uso de la**

En su contestación a estas alegaciones, el proyectista reconvino en daños y perjuicios contra la Comisión de Ciudadanos. A su vez, el Estado Libre Asociado de Puerto Rico, en representación de la Junta de Planificación y ARPE, solicitó que se dictara sentencia sumaria desestimando la acción.

El tribunal de instancia dictó sentencia sumaria parcial en la que concluyó que carecía de jurisdicción para atender la solicitud de la Comisión de Ciudadanos respecto a la consulta de ubicación aprobada por la Junta de Planificación. Resolvió, además, que la Comisión no había solicitado intervención en los procesos adjudicativos ante ARPE y que tampoco acudió al foro apelativo a impugnar los permisos otorgados por dicha agencia. Además, determinó que la Comisión de Ciudadanos había incurrido en incuria por haber esperado alrededor de 44 meses desde que fue aprobada la consulta de

escuela **Inés María Mendoza. El Departamento de Educación los necesita, ya sea para construcciones y ampliaciones relacionadas a la escuela actual, o para la construcción de una nueva escuela elemental e, incluso, para la construcción de una nueva escuela superior, en tanto en cuanto así se decidiera.**

**La Agencia, <u>conciente de las necesidades educativas y de mejoras a las plantas físicas existentes en la Comunidad de Caimito</u>, solicita que la Junta de Planificación inicie los trámites necesarios para <u>separar los mencionados terrenos para uso educativo</u>. En consonancia con lo anterior, reiteramos nuestro propósito de unir esfuerzos con la Comunidad de Caimito y las entidades gubernamentales pertinentes para que se consiga una asignación especial que permita el mejoramiento de los ofrecimientos educativos en este sector.** (Énfasis nuestro).

ubicación, 3 años desde la aprobación del desarrollo preliminar y dos años desde la aprobación del permiso de urbanización para solicitar el injunction. Por esa razón determinó que no procedía concederle el remedio solicitado. Específicamente, el foro primario determinó que no estaba en controversia el hecho de que la Comisión de Ciudadanos no solicitó intervención formalmente ante ARPE ni presentó querella alguna respecto al desarrollo preliminar y permiso de urbanización del proyecto propuesto. Finalmente, concluyó que la alegación de la Comisión de Ciudadanos a favor del Departamento de Educación no cumple con los criterios que reconocen la capacidad de un litigante para cuestionar la actuación de una agencia administrativa a favor de los derechos de terceras personas.

De dicha determinación recurrió la Comisión de Ciudadanos ante el Tribunal de Apelaciones. Mientras la controversia estaba pendiente en ese foro, ARPE aprobó el permiso de construcción del proyecto propuesto. La aprobación del permiso no fue notificada a la Comisión de Ciudadanos. Además, la Comisión le envió dos cartas a la agencia informándole su preocupación respecto a unos señalamientos del Departamento de Transportación y Obras Públicas (DTOP) sobre la colindancia entre los terrenos de la Escuela Inés M. Mendoza y el proyecto propuesto.[5] En

---

[5] En una carta dirigida al proyectista el 12 de mayo de 2004, con copia enviada tanto a la Junta de Planificación

una de dichas cartas la Comisión de Ciudadanos reclama una vez más su derecho a participar en el proceso. El 16 de junio de 2004, **ARPE le contestó a la Comisión de Ciudadanos que atendería dicho asunto y le comunicaría el resultado final.**

El tribunal apelativo confirmó la sentencia sumaria del tribunal de instancia. Posteriormente, denegó la moción de reconsideración presentada  por la Comisión de Ciudadanos.

---

como a ARPE, el entonces Secretario del Departamento de Transportación y Obras Públicas (DTOP), señor Fernando E. Fagundo, explica su preocupación respecto al uso y acceso a carreteras estatales sin la debida aprobación del DTOP. Además, señala  que la colindancia que surge del expediente en ARPE no coincide con el plano de mensura del DTOP que cubre el área de la Escuela Segunda Unidad Caimito Bajo (Escuela Inés M. Mendoza). Por estos fundamentos el Secretario del DTOP le indicó al proyectista lo siguiente:

> Le informo que todo proyecto de construcción que requiera el uso de nuestras vías estatales tiene que ser sometido a la consideración de la Oficina de Control de Acceso, endoso de la Oficina Regional de Obras Públicas y efectuar una aportación por concepto de exacción de impacto en la infraestructura vial.
>
> A tenor con lo antes expresado, le informo que deberá de abstenerse de utilizar nuestras vías estatales para el acarreo de material y el paso de vehículos pesados hacia el referido proyecto. Además, deberá enmendar los planos para que no afecten la propiedad del ELA y a su vez someter los planos detallados del acceso autorizado por ARPE, indicando sección, perfil, colindancias y las mejoras necesarias en la intersección con la carretera PR-842.
>
> **Le expreso que nuestra participación en este asunto es motivada por la afectación a una propiedad del ELA y la necesidad de permiso para accesar a una carretera estatal bajo nuestra jurisdicción.** (Énfasis nuestro).

El 4 de febrero de 2005 la Comisión de Ciudadanos presentó el recurso de certiorari que nos ocupa. Alegó, entre otras cosas, que el Tribunal de Apelaciones había errado al no atender su reclamo de falta de notificación de las determinaciones de ARPE con relación al proyecto y al confirmar la sentencia sumaria dictada por el tribunal de instancia. El 29 de abril de 2005 ordenamos a la parte recurrida expresar su posición.

La Junta de Planificación y ARPE comparecieron conjuntamente. Alegaron, entre otras cosas, que la Comisión de Ciudadanos no solicitó intervenir en el proceso administrativo ante ARPE conforme a derecho y tampoco solicitó revisión judicial de las determinaciones de dicha agencia respecto al proyecto.[6] Añaden que los hechos del caso no están en controversia y que, por lo tanto, el Tribunal de Apelaciones no erró al confirmar la sentencia sumaria parcial dictada por el foro de instancia.

A su vez, el proyectista compareció alegando, entre otras cosas, que la Comisión de Ciudadanos no presentó argumento alguno en cuanto a la determinación de incuria del tribunal de instancia y que al no haberse reconocido

---

[6]Además, las agencias recurridas plantearon que la resolución de ARPE que le reconoce intervención a la Comisión de Ciudadanos en todos los casos relacionados con el sector Caimito no es parte del expediente administrativo de este caso y que fue emitida un año después de haberse aprobado el anteproyecto. Por esa razón, alegan que este Tribunal no puede tomar en consideración esa resolución.

a la Comisión de Ciudadanos como parte interventora en este proceso administrativo particular, ARPE no estaba obligada a notificarle a ésta sus determinaciones sobre el proyecto propuesto.[7]

El 5 de agosto de 2005, ARPE dejó en suspenso las resoluciones emitidas en el proyecto de referencia hasta tanto se dilucidaran las controversias de colindancia señaladas por el DTOP. ARPE no notificó de esto a la Comisión de Ciudadanos. Posteriormente, el proyectista solicitó a ARPE que dejara sin efecto dicha determinación. El 2 de noviembre de 2005, ARPE se reafirmó en la aprobación del anteproyecto y otorgó un término de un año al proyectista para "levantar" el permiso de construcción. ARPE tampoco notificó a la Comisión de Ciudadanos de esta decisión.

El 22 de febrero de 2006, luego de advenir en conocimiento de la resolución que ARPE había emitido el 2 de noviembre de 2005, la cual no se le había notificado, la Comisión de Ciudadanos presentó una moción en auxilio de jurisdicción solicitando que este Tribunal paralizara los procedimientos ante ARPE y la construcción del

---

[7] Además, el proyectista plantea, al igual que las agencias recurridas, que la Comisión de Ciudadanos al Rescate de Caimito no solicitó intervención ante ARPE conforme a derecho y que la resolución de ARPE reconociéndola como parte interventora en todos los procesos relacionados al sector Caimito no tuvo el efecto de convertirla en parte interventora en el proceso adjudicativo particular del proyecto propuesto, ya que dicha decisión no se le notificó al proyectista y se adoptó después de la aprobación del anteproyecto.

proyecto en controversia. El 3 de marzo de 2006 expedimos el auto de certiorari, ordenamos el cese de los procedimientos ante ARPE y prohibimos al proyectista reiniciar los trabajos de construcción.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver.

II

La sección 3.5 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. sec. 2155, dispone que cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito, debidamente fundamentada, para que se le permita intervenir en dicho procedimiento. Este mecanismo de intervención permite que una persona que originalmente no fue parte en un procedimiento pueda defender sus intereses ante la posibilidad de que una determinación administrativa le afecte adversamente. *Id.* Véase además, San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374, 391 (2001), Asoc. Residentes v. Montebello Dev. Corp., 138 D.P.R. 412, 420 (1995). Por esto, la solicitud de intervención puede presentarse en cualquier etapa del procedimiento adjudicativo.

Al evaluar la solicitud de intervención, la agencia deberá considerar los siguientes factores:

> (a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.

(b) Que no existan otros medios en derecho para que el peticionado [sic] pueda proteger adecuadamente su interés.

(c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.

(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

(f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento. 3 L.P.R.A. sec. 2155.

La LPAU establece que estos criterios deben aplicarse liberalmente, de manera que se cumpla con la política pública de participación ciudadana y el propósito de brindar servicios públicos de alta calidad, eficiencia, esmero y prontitud a la ciudadanía. Todo ello con el resguardo de las garantías básicas del debido proceso de ley. *Id.* Véase, Exposición de motivos, Ley Núm. 170 de 12 de agosto de 1988.

Los criterios adoptados por ARPE para evaluar las solicitudes de intervención presentadas ante esta agencia son cónsonos con los criterios legislados. En particular, la sección 4.02 del anterior Reglamento de procedimientos adjudicativos establece dichos criterios y dispone que

ARPE deberá aplicarlos de manera liberal.[8] Sec. 4.02 Reglamento núm. 3915 de mayo de 1989.[9]

_____

[8] Del expediente surge que el proyectista sometió el anteproyecto ante ARPE en el año 2000, por lo que el Reglamento de procedimientos adjudicativos de ARPE aplicable a este caso es el anterior Reglamento núm. 3915 de 6 de mayo de 1989, y no el actual Reglamento de procedimientos adjudicativos de ARPE, Reglamento núm. 6435 de 16 de abril de 2002.

[9] La sección 4.02 del anterior Reglamento de procedimientos adjudicativos de ARPE dispone lo siguiente:

> Se podrá conceder o denegar dicha petición de intervención tomando en consideración, entre otros, los siguientes factores:
>
> (1) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.
>
> (2) Que no existan otros medios en derecho para que el peticionario pueda proteger adecuadamente su interés.
>
> (3) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.
>
> (4) Que el peticionario represente, o sea, portavoz de otros grupos o entidades de la comunidad.
>
> (5) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.
>
> (6) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.
>
> (7) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.
>
> **La ARPE deberá aplicar los criterios que anteceden de manera liberal** y podrá requerir evidencia o documentación adicional para poder emitir la determinación que corresponda con respecto a la

El principio de liberalidad que recoge la LPAU al regular el mecanismo de intervención responde al deber que tienen las agencias administrativas de reconocer y considerar las necesidades de los ciudadanos que pueden ser afectados por el ejercicio de los poderes administrativos delegados. Las agencias vienen obligadas a facilitar la participación de aquellos ciudadanos cuyos intereses puedan ser afectados por la actuación administrativa, para evitar aplicar su pericia a una información que no refleje la situación real de dichos ciudadanos.

La sección 1.3 de la LPAU define lo que es una "parte" en un proceso adjudicativo de la siguiente manera:

> Significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento. 3 L.P.R.A. sec. 2102.

De esta definición se desprende que la designación de una persona como parte en un proceso administrativo no se limita al promovente, al promovido, al interventor y a quien fuera específicamente designado como tal. Lugo Rodríguez v. J.P., 150 D.P.R. 29, 43 (2000). Por el contrario, en Rivera v. Morales, 149 D.P.R. 672 (1999), determinamos que no es necesario solicitar intervención

solicitud de intervención. (Énfasis nuestro) Sec. 4.02 Reglamento núm. 3915 de mayo de 1989.

para ser considerado "parte" en un proceso adjudicativo. En particular, concluimos que una persona que, sin solicitar intervención en un proceso de consulta de ubicación de un proyecto turístico propuesto en su comunidad, fue aceptada como tal por la Junta de Planificación, compareció a las vistas públicas a oponerse a la aprobación de la consulta y presentó una demanda de injunction alegando que se le privó de su derecho a participar en dichas vistas, demostró su interés en intervenir y por lo tanto, era "parte" en el proceso administrativo. *Id.*, en la pág. 690.

En <u>Lugo Rodríguez v. J.P.</u>, supra, dispusimos que para reconocer a una persona como "parte activa" del procedimiento adjudicativo, basta con que la persona tenga un interés legítimo y haya participado activamente en el procedimiento para que ésta sea considerada una "parte" en el proceso. En dicha ocasión, definimos que el participante activo es "aquél que utiliza los remedios disponibles en aras de proteger su interés e interviene de forma tal en el proceso que resultaría injusto y arbitrario no considerarlo una "parte"". *Id.*, en las págs. 43-44. Además expresamos lo siguiente:

> Es cierto que no estamos en el caso de autos ante un grupo de participantes que presentaron una solicitud formal de intervención. Tampoco se trata, sin embargo, de unos participantes que se limitaron a presentar un argumento oral o testimonio durante la vista pública. **Los opositores demostraron interés en el asunto**; comparecieron y declararon en la vista; sometieron sus ponencias; presentaron réplicas a la moción de reconsideración ante la Junta, y fueron

notificados de los escritos de las partes durante el trámite administrativo. Concluimos que los opositores son participantes activos y, por ende, "partes" en el presente caso. (Énfasis nuestro) *Id.,* en la pág. 46.

En el presente recurso el derecho de la Comisión de Ciudadanos a ser "parte" en el proceso adjudicativo en controversia es aún más patente pues la agencia hizo caso omiso de los múltiples intentos de la Comisión de Ciudadanos de lograr una participación efectiva en el caso y no notificó a ésta las decisiones tomadas en el proceso, **a pesar de que en dos ocasiones la agencia le comunicó a la Comisión que tomaría en consideración sus señalamientos respecto al proyecto en controversia.**[10]

Ante esta realidad, los principios que hemos pautado anteriormente nos llevan a concluir que la persona que ha expresado reiteradamente su interés en participar activamente en un proceso adjudicativo debe ser reconocida por los tribunales como "parte" en dicho proceso **cuando tiene un <u>interés legítimo</u> que puede ser afectado por la determinación de la agencia y, además, <u>ha intentado ejercer su derecho a participar efectivamente durante todo el procedimiento, de forma tal, que la única razón por la que no ha logrado dicha participación ha sido la propia arbitrariedad de la agencia</u>.** No reconocerle este derecho sería igualmente arbitrario, caprichoso e injusto.

---

[10] Cartas enviadas por ARPE a la Comisión de Ciudadanos el 8 de agosto de 2001 y 16 de junio de 2004.

En numerosas ocasiones hemos reiterado que los tribunales debemos concederle deferencia a las determinaciones administrativas y no debemos sustituir el criterio especializado de la agencia por nuestro criterio. Sin embargo, también hemos establecido que los tribunales no podemos sostener determinaciones o actuaciones administrativas tan irrazonables que constituyan un abuso de discreción. Cuando una agencia administrativa actúa arbitraria y caprichosamente sus decisiones no merecen nuestra deferencia. San Antonio Maritime v. P.R. Cement Co., supra, en las págs. 396-397, Misión Ind. P.R. v. J.C.A., supra, Rivera Concepción v. A.R.P.E, supra, Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra.

La sección 3.14 de la LPAU establece, entre otras cosas, que las órdenes o resoluciones de las agencias deberán ser notificadas a las partes del proceso administrativo. Además, especifica que dicha notificación deberá advertir el derecho de las partes a solicitar reconsideración ante la agencia o instar un recurso de revisión judicial ante el Tribunal de Apelaciones, con expresión de los términos jurisdiccionales que tienen las partes para ejercer dicho derecho. A su vez, esta sección explica que dichos términos no comenzarán a correr hasta que la agencia haya cumplido con estos requisitos. 3 L.P.R.A. sec. 2164. Por eso, una vez una persona es parte en el proceso adjudicativo, ésta tiene derecho a

participar efectivamente en dicho proceso, ser notificada de las determinaciones, órdenes o resoluciones que emita la agencia y solicitar revisión judicial en igualdad de condiciones a las otras partes. 3 L.P.R.A. sec. 2164. Véase además, San Antonio Maritime v. P.R. Cement Co., *supra*, en la pág. 391. En particular, si la agencia no le notifica alguna determinación tomada durante el proceso adjudicativo, evitando su participación efectiva en los procesos, dicha determinación y cualquier procedimiento posterior **carecerán de eficacia jurídica, ya que violan el derecho que tiene dicha parte al debido proceso de ley**. Mun. de Caguas v. AT&T, 154 D.P.R. 401, 413-415 (2001). Véase además, Asoc. Residentes v. Montebello Dev. Corp., 138 D.P.R. 412, 421-422 (1995).

Reiteradamente hemos establecido que por imperativo del derecho a un debido proceso de ley la notificación adecuada de una determinación administrativa resguarda el derecho de las partes a cuestionar dicha determinación en el foro judicial. IM Winner, Inc. v. Mun. de Guayanilla, 151 D.P.R. 30, 35-38 (2000), Colón Torres v. A.A.A., 143 D.P.R. 119, 124 (1997). En particular, en el caso Mun. De Caguas v. AT & T, 154 D.P.R. 401 (2001) expresamos lo siguiente:

> Los remedios posteriores a ese dictamen provistos por reglamentos y estatutos forman parte del debido proceso de ley y la falta de notificación adecuada puede impedir que se procuren tales remedios, enervando así las garantías del debido proceso de ley. *Id.*, en la pág. 414.

En protección de dicho derecho, hemos determinado que no se le pueden oponer los términos jurisdiccionales para recurrir de una determinación administrativa a una parte que no ha sido notificada de dicha determinación conforme a derecho. IM Winner, Inc. v. Mun. de Guayanilla, *supra*, Colón Torres v. A.A.A., *supra*. Además, en el caso Carabarín *et al.* v. A.R.P.E., 132 D.P.R. 938 (1993), establecimos que aunque la agencia notifique a una parte su determinación, **si dicha notificación no advierte adecuadamente el foro al que se debe acudir en revisión, no se puede perjudicar a la parte por haber acudido al foro erróneo, ya que ésto sería permitir que la agencia se beneficie de actuaciones administrativas que inducen a error a la parte notificada**. *Id.,* en las págs. 958-959.

A través de la revisión judicial los tribunales aseguramos que las agencias administrativas actúen de acuerdo a las facultades delegadas por ley y que cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley. La revisión judicial garantiza a los ciudadanos un foro al que recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias. Misión Ind. P.R. v. J.C.A., 145 D.P.R. 908, 930 (1998), Rivera Concepción v. A.R.P.E, 152 D.P.R. 116, 122 (2000), Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 435 (1997). Conforme a

los principios que hemos validado consistentemente en nuestras opiniones, si una parte no ha sido notificada de la determinación de una agencia, de su derecho a solicitar revisión judicial ante el Tribunal de Apelaciones, ni de los términos jurisdiccionales correspondientes, según lo requiere la sección 3.14 de la LPAU, *supra*, a dicha parte no se le pueden oponer estos términos y mucho menos, se le puede perjudicar por no haber acudido al Tribunal de Apelaciones para vindicar sus derechos.

III

Según expusimos anteriormente, en carta fechada el 1 de agosto de 2001, pero presentada ante ARPE el 31 de julio 2001, la Comisión de Ciudadanos se opuso por derecho propio a la solicitud de prórroga presentada por el proyectista en este caso, alegando su derecho a participar en el proceso adjudicativo del proyecto en controversia. El 8 de agosto de 2001, **antes de concederse la prórroga del anteproyecto, la agencia le comunicó a la Comisión de Ciudadanos que tomaría en consideración sus alegaciones en el proceso adjudicativo de dicho proyecto.** Sin embargo, el 24 de agosto de 2001 ARPE aprobó la prórroga del anteproyecto, sin notificar a la peticionaria.

De igual forma, el 7 de marzo de 2002 se aprobó el permiso de urbanización a pesar de que el 29 de octubre

de 2001 la Comisión de Ciudadanos había enviado una carta por derecho propio a la agencia aduciendo que se le estaba negando su derecho a participar en el proceso adjudicativo en controversia. Además, estando el caso pendiente ante el Tribunal de Apelaciones y a pesar de que la Comisión de Ciudadanos volvió a enviar una carta por derecho propio a la agencia el 31 de enero de 2003 alegando que la agencia le había violado su derecho a un debido proceso de ley, ARPE aprobó el permiso de construcción del proyecto propuesto, sin notificar a la Comisión de Ciudadanos.

Posteriormente, la Comisión de Ciudadanos envió dos cartas a la agencia en el año 2004 invocando, nuevamente, su derecho a un debido proceso de ley. **La agencia le contestó que se comunicaría con ésta para dejarle saber el resultado final de las indicaciones hechas en una de sus cartas respecto a unos señalamientos del DTOP**. Sin embargo, y aunque el caso estaba pendiente ante este Tribunal, pues habíamos ordenado a la parte recurrida expresar su posición, el 2 de noviembre de 2005 ARPE reafirmó la aprobación del anteproyecto sin notificar a la Comisión de Ciudadanos.

El expediente del caso ante nuestra consideración revela claramente que **la Comisión de Ciudadanos intentó ejercer su derecho a participar efectivamente durante todo el procedimiento, y que la única razón por la que no logró participar activamente en el proceso, según los**

**criterios establecidos en <u>Lugo Rodríguez v. J.P.</u>,** *supra*, **fue la propia arbitrariedad de la agencia.** Además, es un hecho no controvertido que la Comisión de Ciudadanos notificó en varias ocasiones al proyectista sobre su derecho a participar en el proceso.

La constante acción de ignorar el reclamo de participación de la Comisión de Ciudadanos en los distintos incidentes del procedimiento de autos y la falta de notificación a la Comisión de Ciudadanos de las determinaciones de la agencia durante todo el proceso administrativo, demuestran que ARPE inhibió de manera arbitraria la participación activa y eficaz de la Comisión de Ciudadanos en dicho proceso. Queda evidenciado, además, un proceder cuyo resultado fue confundir a la Comisión de Ciudadanos que confió en las manifestaciones de la agencia mientras ésta, contrario a sus propias comunicaciones[11], le negaba la posibilidad de participar efectivamente en un proceso que afectaba a su comunidad.

La arbitrariedad de la agencia causó que el proceso adjudicativo del proyecto residencial Paseo del Monte no contara con la perspectiva y conocimiento de la comunidad de Caimito.[12] Del expediente no surge que la agencia haya

---

[11] Cartas enviadas por ARPE a la Comisión de Ciudadanos el 8 de agosto de 2001 y 16 de junio de 2004.

[12] Por ejemplo, en su comunicación del 31 de enero de 2003 la Comisión de Ciudadanos planteó la necesidad de servicios educativos en Caimito y puso a la agencia en conocimiento de las gestiones que la comunidad llevaba a

tomado acción alguna respecto a los planteamientos que la Comisión hizo reiteradamente en relación con varios asuntos que entendía que la agencia debía tomar en consideración al ejercer sus facultades adjudicativas. Por el contrario, mientras la controversia estaba pendiente ante el Tribunal de Apelaciones, ARPE aprobó el permiso de construcción del proyecto propuesto sin haber analizado razonablemente estos planteamientos en alguna resolución de la agencia.

Al impedir la participación de la Comisión de Ciudadanos en el proceso adjudicativo, ARPE no consideró las necesidades de planificación identificadas por la comunidad y aplicó su pericia a una información que no refleja la situación real de la comunidad que se vería afectada por sus determinaciones. Este proceder no sólo es arbitrario sino que constituye también una clara violación a la política pública de participación ciudadana que la LPAU le impone a dicha agencia.[13]

Resolvemos que la Comisión de Ciudadanos utilizó todos los mecanismos que tuvo a su alcance con el fin de proteger su **interés legítimo** y participar en el proceso adjudicativo del proyecto residencial Paseo del Monte que se llevó a cabo en ARPE y que lo único que impidió dicha

---

cabo para dedicar el terreno objeto de la acción administrativa a ese uso y el interés del Departamento de Educación en que así fuera.

[13] Adviértase que no estamos adjudicando la procedencia o los méritos de los reclamos que la Comisión de Ciudadanos interesa plantear ante el foro administrativo.

participación fue la arbitrariedad de la agencia. De esta forma, aunque no haya solicitado intervenir formalmente en el proceso adjudicativo en controversia, la Comisión de Ciudadanos **debió ser reconocida como parte** en dicho proceso. Resolver lo contrario sería avalar los actos arbitrarios de la agencia y perpetuar una injusticia.

Habiendo establecido que la agencia no salvaguardó el derecho de la Comisión de Ciudadanos a participar efectivamente en el proceso y a ser notificada de las determinaciones de la agencia, veamos entonces si ARPE salvaguardó su derecho a solicitar revisión judicial.

Como bien surge de los hechos del caso, **ARPE no notificó ninguna de sus determinaciones sobre el proyecto propuesto a la Comisión de Ciudadanos**. Ante esa realidad no podemos concluir que la agencia resguardó el derecho de la Comisión de Ciudadanos a solicitar revisión judicial en igualdad de condiciones a las otras partes. En particular, ARPE no cumplió con la sección 3.14 de la LPAU, *supra*, que requiere que se le notifique a las partes, entre otras cosas, su derecho a solicitar revisión judicial ante el Tribunal de Apelaciones y el término jurisdiccional correspondiente. Por esto, a la Comisión de Ciudadanos no se le puede oponer dicho término, y mucho menos, se le puede perjudicar por no haber acudido al Tribunal de Apelaciones. En estas circunstancias la Comisión de Ciudadanos podía acudir al Tribunal de Primera Instancia para vindicar sus derechos.

Ante esta situación, no podemos otorgar deferencia a las acciones y determinaciones de ARPE. Debemos cumplir con nuestra función revisora y concederle un remedio adecuado a la Comisión de Ciudadanos que subsane efectivamente las violaciones a su derecho a un debido proceso de ley.

Finalmente, debemos aclarar que en este caso no cabe hablar de incuria. El Tribunal de Primera Instancia determinó que la Comisión de Ciudadanos incurrió en incuria por haber esperado alrededor de 3 años desde la aprobación del desarrollo preliminar y dos años desde la aprobación del permiso de urbanización para presentar su demanda. No nos convence el razonamiento del tribunal. La doctrina de incuria la hemos definido como la "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". Aponte v. Srio. De Hacienda, E.L.A., 125 D.P.R. 610, 618 (1990). Véase además, Pérez, Pellot v. J.A.S.A.P., 139 D.P.R. 588, 599 (1995), Colón Torres v. A.A.A., 143 D.P.R. 119, 124 (1997). La doctrina de incuria no opera automáticamente por el mero transcurso del tiempo. En Pérez, Pellot v. J.A.S.A.P., *supra*, señalamos lo siguiente:

> Como es sabido, en dicha doctrina no basta el mero transcurso del tiempo para impedir el ejercicio de la causa de acción, sino que deben evaluarse otras

circunstancias antes de decretar la desestimación del recurso. [Citas omitidas]. Circunstancias tales como "la justificación, si alguna, de la demora incurrida, el perjuicio que ésta acarrea y el efecto sobre intereses privados o públicos involucrados". *Rivera v. Dpto. de Servicios Sociales*, supra, pág. 247. Además, cada caso deberá ser examinado a la luz de sus hechos y circunstancias particulares. <u>Pérez, Pellot v. J.A.S.A.P.</u>, *supra*, en las págs. 599-600.

Los hechos de este caso claramente revelan que la comunidad no incurrió en dejadez o negligencia, sino todo lo contrario. La Comisión de Ciudadanos reclamó su derecho a intervenir en el proceso adjudicativo ante ARPE. Todas las cartas que envió a la agencia fueron notificadas al proyectista y no fue hasta después de haber agotado los recursos ante la agencia que la Comisión de Ciudadanos decidió acudir al foro judicial a vindicar sus derechos. Tanto la agencia como el proyectista estaban concientes del constante reclamo de la Comisión de Ciudadanos sobre su derecho a participar y ser notificada.

Se trata, pues, de unos ciudadanos que responsablemente han decidido colaborar en la planificación de su comunidad y se han esforzado por lograr la participación efectiva en un proceso administrativo que afectará directamente su entorno social, económico y ambiental. Ante esa realidad, sería irrazonable aplicar la doctrina de incuria. Como bien expresamos en <u>Asoc. Residentes v. Montebello Dev. Corp.</u>, supra, y reiteramos en <u>Mun. de Caguas v. AT & T</u>, supra, las personas de una comunidad "[c]omo personas más

cercanas, directamente afectadas, tenían derecho a ser oídos; a la postre, a ellos le corresponde velar y defender su inmediato *habitat*." Asoc. Residentes v. Montebello Dev. Corp., supra, a la pág. 422.

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones que confirma la sentencia sumaria del Tribunal de Primera Instancia, y se devuelve el caso a ARPE para que reabra el proceso adjudicativo para la consideración de los permisos solicitados por el proyectista permitiendo la participación efectiva de la Comisión de Ciudadanos. Sólo así podrá ARPE tomar una determinación especializada basada en un expediente administrativo que integre el insumo real de todas las partes.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Comisión de Ciudadanos al Rescate de Caimito, Inc.<br>    Peticionarios | | *Certiorari* |
| v. | | CC-2005-96 |
| G.P. Real Property S.E. y otros<br>    Recurridos | | |

*SENTENCIA*

En San Juan, Puerto Rico, a 4 de junio de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se revoca la sentencia del Tribunal de Apelaciones y se devuelve el caso a la Administración de Reglamentos y Permisos para que reabra el proceso adjudicativo para la consideración de los permisos solicitados por el proyectista recurrido, señor Gerardo I. Pérez Rivera, permitiendo la participación efectiva de la peticionaria, Comisión de Ciudadanos al Rescate de Caimito, Inc.

Lo acordó y manda el Tribunal y certifica la Secretaria Interina del Tribunal. El Juez Presidente señor Hernández Denton disiente con opinión escrita a la que se une el Juez Asociado señor Rivera Pérez.

Dimarie Alicea Lozada
Secretaria Interina del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Comisión de Ciudadanos al
Rescate de Caimito, Inc.

    Peticionaria

       v.               CC-2005-96    Certiorari

G.P Real Property SE y Otros

    Recurrida

Opinión Disidente emitida por el Juez Presidente señor Hernández Denton a la cual se une el Juez Asociado señor Rivera Pérez

San Juan, Puerto Rico a 4 de junio de 2008.

Disentimos de la Opinión del Tribunal ya que resulta incomprensible cómo una mayoría de este foro altera y trastoca de forma perjudicial todo el ordenamiento administrativo referente al concepto de "parte" para fines de revisión judicial, al ampliar forzadamente el mismo y extenderlo a una entidad cuya alegada participación se limitó al envío de un número reducido de cartas ante las agencias concernidas. La Opinión del Tribunal opta por extender la normativa en cuestión en el caso de epígrafe a pesar de que las comunicaciones enviadas por la Comisión de Ciudadanos al Rescate de Caimito a

la Administración de Reglamentos y Permisos iban dirigidas, esencialmente, a impugnar una determinación <u>final y firme</u> de la Junta de Planificación aprobando la consulta de ubicación para el desarrollo en controversia.

Más aún, dicha Opinión hace la injustificada extensión del concepto "parte" en un caso donde claramente aplica la doctrina de <u>incuria</u> ante la falta de diligencia demostrada por la Comisión en el ejercicio de sus derechos, al intentar impugnar los permisos en controversia cuarenta y cuatro (44) meses luego que la Junta de Planificación aprobara la consulta de ubicación, tres (3) años después que ARPE aprobara el anteproyecto y casi dos (2) años luego de la aprobación del permiso de urbanización.

Igualmente, resulta sumamente preocupante e irrazonable el remedio concedido por el Tribunal en el caso de epígrafe. Luego de determinar erróneamente que la Comisión es parte en el procedimiento administrativo en cuestión, el Tribunal deja sin efecto los permisos ya concedidos y ordena reabrir todo el procedimiento administrativo. Independientemente de cómo la Opinión del Tribunal llame el remedio concedido, en efecto se trata del remedio extraordinario del *injunction* y en el día de hoy la Opinión lo concede sin discutir los criterios para emitir el mismo. Tampoco toma en cuenta que este caso se encuentra ante la consideración del Tribunal desde el año 2005 y el proyecto de vivienda ha estado paralizado desde entonces.

En momentos en que el país necesita de seguridad jurídica y confianza en las actuaciones de su gobierno, este Tribunal da un rudo golpe a la estabilidad de los procedimientos administrativos y del sistema de permisología. Sin duda, la norma adoptada por el Tribunal en el día de hoy es capaz de producir la desestabilización de las relaciones jurídicas y erosiona la confianza en las determinaciones administrativas. Es por eso que nos vemos obligados a disentir enérgicamente del curso decisorio seguido por la Opinión del Tribunal.

I

El 19 de enero de 2000, la Junta de Planificación aprobó una consulta de ubicación solicitada por el Sr. Gerardo I. Pérez Rivera (en adelante, el Desarrollador). El proyecto de vivienda fue identificado como Paseo del Monte y consistía de ciento cuarenta y cuatro (144) unidades familiares que ubican en el Sector Caimito de Río Piedras. La determinación de la Junta de Planificación aprobando la consulta de ubicación fue notificada a todas las partes interesadas, incluyendo a la Comisión de Ciudadanos al Rescate de Caimito.

Oportunamente, la Comisión solicitó la reconsideración de la Resolución emitida por la Junta de Planificación y alegó que la aprobación del proyecto requería la celebración de una vista administrativa y notificación a los colindantes. **El 15 de marzo de 2000,** la Junta de Planificación notificó a la Comisión una Resolución

declarando no ha lugar la solicitud de reconsideración.  En la misma, le advirtió de su derecho a solicitar revisión judicial ante el Tribunal de Apelaciones dentro del término de treinta (30) días. **No obstante, la Comisión no recurrió y la determinación de la Junta de Planificación advino final y firme.**

Posteriormente, el Desarrollador sometió el proyecto ante ARPE. Dicha agencia concedió el anteproyecto propuesto el **15 de agosto de 2000**.  A su vez, el 22 de agosto de 2001 aprobó una prórroga al mencionado desarrollo preliminar y anteproyecto. La prórroga había sido solicitada por el Desarrollador, quien adujo que era necesaria para cumplir con ciertos requerimientos exigidos por la propia agencia. Finalmente, el 6 de marzo de 2002, ARPE emitió el permiso de urbanización del proyecto en controversia.

Aproximadamente una año y medio después, el **24 de noviembre de 2003**, la Comisión presentó una demanda de *injunction* preliminar y permanente impugnando la consulta de ubicación aprobada por la Junta de Planificación, el anteproyecto y el desarrollo preliminar autorizado por ARPE.  En su demanda, alegó que la Junta de Planificación incumplió con su deber ministerial de consultar a los ciudadanos de Caimito y de celebrar vistas públicas lo cual, según la Comisión, constituye una violación al debido proceso de ley. Al amparo de ello, reclamó la revocación de los permisos concedidos.

La Comisión argumentó que, conforme a un acuerdo emitido por ARPE el 9 de marzo de 2001 como parte de los procedimientos administrativos relacionados a otro proyecto, la agencia la autorizó como interventora "en los asuntos y proyectos de desarrollo de construcción dentro de las inmediaciones del sector Caimito del Barrio Río Piedras". No obstante, alegó que no fue notificada de la determinación tomada por la agencia el 15 de agosto del 2000, ni de ninguna otra determinación posterior.

De la autorización se desprende que el alegado reconocimiento se dio en el contexto del procedimiento administrativo llevado a cabo por ARPE para el proyecto Flores de Montehiedra, propuesto por la compañía A.H. Development. En el mencionado acuerdo –con fecha del 9 de agosto de 2001, **fecha posterior a la aprobación del anteproyecto**– ARPE autorizó a la Comisión como interventora "en los asuntos y proyectos de desarrollo de construcción dentro de las inmediaciones del Sector Caimito del Barrio Río Piedras y muy en particular al caso 97-17-A-601-CPCU y otros relacionados".

Examinado el asunto, el Tribunal de Primera Instancia desestimó la demanda mediante una sentencia sumaria parcial. A su entender, la Resolución de la Junta de Planificación aprobando la consulta de ubicación advino final y firme luego que la Comisión no ejerciera su derecho a la revisión judicial dentro de los treinta (30) días de haber sido notificada. Por tal razón, concluyó que no tenía

jurisdicción sobre el asunto. Además, le aplicó la doctrina de incuria a la Comisión por intentar impugnar la Resolución de la Junta de Planificación cuarenta y cuatro (44) meses de ésta haber sido emitida.

En cuanto a las alegaciones relacionadas con el procedimiento ante ARPE, el tribunal de instancia expresó que la Comisión no había presentado una solicitud formal para intervenir en el mismo. De igual forma, resolvió que la Comisión incurrió en incuria al impugnar el anteproyecto y desarrollo preliminar transcurridos más de tres (3) años desde su aprobación y al impugnar el permiso de urbanización casi dos (2) años de éste haber sido aprobado. En sus conclusiones de derecho, el tribunal expresó que las actuaciones de la Comisión al acudir al tribunal años después de advenir finales y firmes las determinaciones de la Junta de Planificación y de ARPE, teniendo conocimiento de las mismas, demuestran un claro menosprecio por los mecanismos procesales establecidos por ley para el ejercicio de sus derechos.

Inconforme, la Comisión recurrió en apelación al Tribunal de Apelaciones y solicitó la revocación de la sentencia sumaria parcial emitida por el tribunal de instancia. En sus señalamientos de error, sostuvo que erró el juez de instancia al no declarar nula la consulta de ubicación expedida por la Junta de Planificación, por haberse incumplido con el requisito de vista pública y notificación de colindantes. Además, alegó que existía

controversia sustancial sobre hechos materiales, por lo que el tribunal no debió dictar sentencia sumariamente.

El Tribunal de Apelaciones confirmó la sentencia de instancia y aplicó la doctrina de cosa juzgada. Dicho foro expresó que, por la Comisión no ejercer su derecho a la revisión judicial con relación a la Resolución de la Junta de Planificación, ésta advino final y firme, por lo que le era aplicable la doctrina de cosa juzgada. Determinó que no había controversia en cuanto a que la Comisión nunca impugnó en los tribunales la determinación de la Junta de Planificación.

Tras solicitar infructuosamente la reconsideración del dictamen, la Comisión acude ante nos y solicita la revocación del mismo. En sus señalamientos de error, alega que la determinación de la Junta de Planificación es nula debido a que ésta no celebró vistas públicas ni notificó debidamente a los colindantes. A su vez, cuestiona la aplicación de la doctrina de cosa juzgada hecha por el foro apelativo, así como la disposición sumaria del asunto por parte del tribunal de instancia. Por último, alega que erró el foro apelativo al no atender separadamente su reclamo relacionado a la falta de notificación por parte de ARPE.

En atención a dichas alegaciones, la Opinión del Tribunal revoca la sentencia del Tribunal de Apelaciones y devuelve el caso a ARPE para que la agencia reabra todo el procedimiento administrativo y le de la debida

participación a la Comisión. Al así resolver, la Opinión amplía la definición de "parte" para fines de notificación de una determinación administrativa y rechaza la aplicación de la doctrina de incuria por entender que la Comisión no demostró dejadez o negligencia en el reclamo de sus derechos. Esto a pesar del hecho innegable de que la Comisión presentó su demanda cuarenta y cuatro (44) meses luego de la aprobación de la consulta de ubicación por parte de la Junta de Planificación, tres (3) años luego que ARPE aprobara el anteproyecto y casi dos (2) años luego de la aprobación del permiso de urbanización.

No estamos de acuerdo con el curso de acción del Tribunal al ampliar forzadamente la definición de "parte" por entender que dicho proceder constituye una amenaza para la estabilidad de nuestro sistema administrativo. Tampoco podemos endosar las razones expuestas en la Opinión del Tribunal para no aplicar la doctrina de incuria a una parte que claramente fue negligente en el reclamo de sus derechos y que no utilizó los mecanismos procesales provistos por ley para la revisión de las determinaciones administrativas en los tribunales.

## II

En el caso de autos, no está en controversia el hecho de que la Comisión no solicitó intervención formalmente en el procedimiento adjudicativo ante ARPE y que, por ende, nunca fue reconocida como tal por dicha agencia. Por otro lado, somos del criterio que dicha agrupación tampoco

cumplió con los requisitos para ser considerada "parte" para fines de un recurso de revisión judicial. La Comisión no demostró que tuviese un interés legítimo para poder participar en calidad de "parte" en esa etapa de los procedimientos administrativos que se estaban llevando a cabo en ARPE.

Nótese que existe una diferencia entre lo que constituye una "parte" para fines de participación en el procedimiento administrativo y "parte" para efectos de los procedimientos posteriores de revisión judicial. La Sección 1.3 de la L.P.A.U. define "parte" como toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento. 3 L.P.R.A. Sec. 2102. De conformidad con la L.P.A.U., hemos reiterado que no sólo el promovente, el promovido, el interventor y aquel designado como tal se consideran "parte" en un procedimiento administrativo.

Como bien afirmamos en Junta de Planificación v. Frente Unido Pro Defensa del Valle de Lajas, **"es parte aquél que participa activamente en un proceso administrativo adjudicativo y cuyos derechos y obligaciones pueden verse afectados por la actuación de la agencia."** Véase Junta de Planificación v. Frente Unido Pro Defensa

del Valle de Lajas, res. el 26 de agosto de 2005, 2005 T.S.P.R. 117; Lugo Rodríguez v. J.P., 150 D.P.R. 29, 43 (2000).

En Lugo Rodríguez, nos expresamos sobre quiénes son "parte" para fines de la notificación de un recurso de revisión judicial. En esa ocasión, distinguimos el participante activo de un mero participante y concluimos que el mero participante no es parte y, por tanto, no tiene que ser notificado de un recurso de revisión judicial. En aquella ocasión aclaramos que no son "parte" a quienes tenga que notificárseles copia de los recursos de revisión judicial: (1) el mero participante; (2) el amicus curiae; (3) aquel que comparece a la audiencia pública sin mayor intervención; (4) aquel que únicamente declara en la vista, sin demostrar ulterior interés; (5) aquel que se limita a suplir evidencia documental; y (6) aquel que no demuestre tener un interés que pueda verse adversamente afectado por el dictamen de la agencia. Lugo Rodríguez v, J.P., Id.

Por tanto, si bien es cierto que hemos adoptado como política pública propiciar una participación amplia en los procedimientos administrativos de todo aquel que tenga un interés que pueda ser afectado por la determinación administrativa, esto no convierte a todo el que participa en un procedimiento administrativo en "parte" para fines de la revisión judicial de la acción administrativa. Véase Junta de Directores Condominio Portofino v. P.D.C.M. Associates, S.E., res. el 2 de abril de 2008, 2008 T.S.P.R.

54. Sobre el particular, el profesor Demetrio Fernández opina que "una parte puede carecer de legitimación activa para participar en la revisión judicial, pero puede ser considerada como "agraviada" e interesada en participar e intervenir en el proceso administrativo. Véase D. Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, Ed. Forum, 1993, pág. 145.

De esta forma, se puede dar amplia oportunidad para participar a todo el que esté interesado en los procedimientos y que pueda ser afectado por la determinación administrativa, sin hacer inmanejables o demasiado onerosos los procedimientos posteriores de reconsideración y revisión judicial. Es decir, se debe reconocer de forma liberal el derecho de los ciudadanos a participar en los procedimientos administrativos, pero debemos estar claros que no cualquier tipo de participación los convierte en "parte" para fines de la revisión judicial. Véase <u>Junta de Directores Condominio Portofino v. P.D.C.M.</u>, S.E., *supra*.

Cónsono con lo anterior, en otras ocasiones nos hemos negado a reconocer como parte a una persona o entidad por el mero hecho de haber sido consultada o haber sido notificada de la determinación final de la agencia. Véase <u>Rivera Ramos v. Morales Blas</u>, 149 D.P.R. 672 (1999).[14] De

---

[14] En ese caso, la Junta de Planificación le había consultado a varias agencias y entidades durante el transcurso del procedimiento administrativo y le había notificado su resolución final a algunas de éstas. Sin

igual forma, le hemos negado la condición de "parte" para fines de un recurso de revisión a varias personas y entidades por éstas haber sido notificadas en virtud del requisito reglamentario de notificación a vecinos por encontrarse dentro de un radio de cien (100) metros del proyecto propuesto. Junta de Directores Condominio Portofino v. P.D.C.M., S.E., *supra*.

En el caso de autos, el expediente demuestra que la Comisión expresó su oposición al proyecto propuesto y que sus preocupaciones fueron atendidas y contestadas por los funcionarios correspondientes en ARPE. **Las referidas comunicaciones entre la Comisión y varias agencias del gobierno, incluyendo ARPE, están recogidas en varias cartas en las que la Comisión se concentra en solicitar la anulación de la consulta de ubicación aprobada por la Junta de Planificación, a pesar que dicha consulta advino final y firme dado que la Comisión no recurrió en revisión administrativa.**

Por ejemplo, en carta fechada el 1 de agosto de 2001, la Comisión se opuso a una prórroga del permiso preliminar solicitada por el desarrollador. Entre las razones expuestas para oponerse, la Comisión reprodujo los mismos argumentos que levantó en una moción de reconsideración ante la Junta de Planificación, reconsideración que fue

---

embargo, este Tribunal expresó que la Junta de Planificación no estaba obligada a notificarles ya que las entidades consultadas por la Junta no caen bajo la definición de parte contenida en la L.P.A.U., *supra*.

declarada no ha lugar y de la cual la Comisión no recurrió en revisión administrativa. En cuanto al anteproyecto presentado ante ARPE, alegó que el mismo no cumplía con la consulta de ubicación aprobada por la Junta de Planificación. Además, adujo que el proyecto propuesto era diametralmente opuesto al estilo de vida de los vecinos de Caimito y al carácter de la calle. Dicha carta fue contestada por ARPE, indicando que tomaría en consideración las objeciones expuestas por la Comisión.

De igual forma, la Comisión abogó porque —en lugar del proyecto propuesto— se diera paso a la construcción de una nueva escuela en los terrenos en controversia, por lo que solicitó se transfirieran los derechos de desarrollo y se archivara la consideración del proyecto. A estos efectos, envió una carta a ARPE con fecha del 29 de octubre de 2001. Dicho reclamo fue reiterado por la Comisión en una carta dirigida al administrador de ARPE con fecha del 31 de enero de 2003. En su misiva, la Comisión admitió tener conocimiento del anteproyecto de construcción expedido por ARPE y alegó que el mismo fue expedido sin habérsele notificado.

De lo anterior se desprende que la Comisión participó por medio de comunicaciones escritas —en las que expresó sus preocupaciones para con el proyecto propuesto— y tuvo conocimiento de los procedimientos que se estaban llevando a cabo en ARPE. No obstante, esa limitada participación en el proceso no la convirtió automáticamente en "parte" para

fines de la notificación de la determinación de la agencia o de un recurso de revisión judicial. Resolver de otra forma –tal y como hace una mayoría de este Tribunal en el día de hoy– sería revocar *sub silentio* una norma jurisprudencial sólida y claramente establecida en casos como <u>Junta de Planificación v. Frente Unido Pro Defensa del Valle de Lajas</u>, *supra* y <u>Lugo Rodríguez v. J.P.</u>, *supra*.

Nótese que la alegada participación se circunscribió a unas cartas haciendo constar sus preocupaciones con el desarrollo. De ninguna manera podemos endosar la tesis de que ese nivel de participación sea suficiente para que se le considere "parte" para fines de los procedimientos posteriores de revisión judicial, sin que haya mediado una solicitud formal para intervenir en el proceso. De hecho, conviene recordar que –tal como hemos mencionado– **la autorización a la que hace referencia la Comisión y donde alegadamente ARPE la reconoce como interventora en todos los proyectos en el Sector Caimito, se dio en el contexto de otro procedimiento administrativo no relacionado al caso de autos y en fecha posterior a la aprobación de los permisos en controversia.**

No obstante, aún si para fines argumentativos concluyéramos que la Comisión era parte a quien debía notificársele la resolución de ARPE, **la L.P.A.U. establece en términos inequívocos que la revisión judicial es el recurso exclusivo para revisar los méritos de una decisión administrativa**. 3 L.P.R.A. Sec. 2172; véase, además,

Rosario & Associates, Inc. v. Departamento de la Familia, 157 D.P.R. 306, 318 (2002) (Énfasis nuestro). Según la propia L.P.A.U., dicha solicitud de revisión deberá ser presentada dentro del término de treinta (30) días a partir del archivo en autos de copia de la notificación de la determinación final de la agencia. 3 L.P.R.A. sec. 2172.

Si bien en pasadas ocasiones hemos expresado que una persona no puede ser obligada a agotar los remedios administrativos cuando ésta no ha participado en el proceso que se llevó ante la agencia, **lo cierto es que en el caso de autos la Comisión fue parte del procedimiento ante la Junta de Planificación y tuvo conocimiento y algún grado de participación en proceso administrativo ante ARPE**. En vista de ello, aun cuando no había sido notificada, la Comisión pudo haber acudido ante el Tribunal de Apelaciones, señalando que erró la agencia al no notificarle su determinación a pesar de haber participado en el procedimiento administrativo.

**Sin embargo, la Comisión nunca acudió en revisión judicial de la determinación de ARPE al Tribunal de Apelaciones**. En su lugar, presentó –años después que la agencia tomara las determinaciones en controversia– una demanda en el Tribunal de Primera Instancia pidiendo la paralización de la obra. Fue, precisamente, de la desestimación de dicha demanda que la Comisión acudió en apelación al tribunal apelativo y no en revisión judicial. De esa forma, la Comisión no utilizó el remedio adecuado en

ley para revisar las determinaciones administrativas en controversia y dejó que los dictámenes que alegadamente le perjudicaban advinieran finales y firmes. Por tal razón, el Tribunal de Apelaciones no tenía jurisdicción para revisar la determinación de ARPE, ni la de la Junta de Planificación.[15]

Somos del criterio que, tal como expresara el tribunal de instancia, **las decisiones administrativas no están ni pueden estar sujetas a revisión judicial indefinidamente.** Cuando las mismas advienen finales y firmes los foros judiciales pierden jurisdicción para revisarlas. La estabilidad jurídica y la confianza que las partes deben tener en las actuaciones de las agencias gubernamentales así lo requieren.

### III

Ahora bien, la Comisión alega que por no haber sido notificada oficialmente de la determinación de la agencia, los términos para pedir revisión judicial no se han activado. Nuevamente, si para fines argumentativos concluyéramos que la Comisión debió ser notificada de la determinación administrativa en calidad de "parte", de

---

[15] Es evidente que la Comisión tampoco tenía a su disposición el recurso extraordinario del *injunction* pues, tal como determinó el tribunal de instancia al desestimar la demanda, la Comisión no cumplió con los requisitos del recurso extraordinario del *injuction*, en particular, la inexistencia de un remedio adecuado en ley. Véase Plaza Las Americas v. N & H, S.E./ Tienda Sedeco, res. el 29 de diciembre de 2005, 2005 TSPR 203, Mun. De Ponce v. Gobernador, 136 D.P.R. 776 (1994); P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200 (1975).

todas maneras tendríamos que concluir que tampoco le asiste la razón en cuanto a dicho señalamiento. **Debemos recordar que, si bien una notificación defectuosa impide que decurse el término para acudir en revisión, el término dentro del cual debe interponerse el correspondiente recurso queda sujeto a la doctrina de incuria.** Véanse IM Winner, Inc v. Junta de Subastas, 151 D.P.R. 30, 39 (2000); Colón Torres v. A.A.A., 151 D.P.R. 30, 39 (2000); Rivera v. Departamento de Servicios Sociales, 132 D.P.R. 240, 247 (1992); García v. Adm. del Derecho al Trabajo, 108 D.P.R. 53, 59 (1978)(Énfasis nuestro).

La doctrina de incuria se define como la dejadez o negligencia en el reclamo de un derecho, el cual en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad. IM Winner, Inc v. Junta de Subastas, *supra*; Colón Torres v. A.A.A., *supra*. Por tanto, aun cuando los términos para solicitar revisión de la determinación de una agencia no pueden correr ante una notificación defectuosa, lo cierto es que una persona que alega debió ser notificada de una determinación administrativa y que tenía conocimiento de ésta, no puede cruzarse de brazos y esperar años antes de acudir al tribunal a impugnar la determinación.

En el caso de autos, precisamente, ARPE aprobó el anteproyecto propuesto el 15 de agosto de 2000 y, a pesar de tener conocimiento de los procedimientos ante ARPE, al

día de hoy la Comisión todavía no ha presentado recurso de revisión alguno ante el Tribunal de Apelaciones. Por el contrario, la Comisión optó por presentar ante el foro de instancia una demanda de *injunction* preliminar y permanente solicitando la paralización de la construcción del proyecto propuesto. **Dicha demanda, -tal y como hemos señalado- además de no ser el recurso adecuado, fue presentada cuarenta y cuatro (44) meses luego que la Junta de Planificación aprobara la consulta de ubicación, tres (3) años después que ARPE aprobara el anteproyecto y casi dos (2) años luego de la aprobación del permiso de urbanización.**

Las actuaciones de la Comisión al no utilizar el mecanismo legal correspondiente para revisar la determinación administrativa y no presentar oportunamente un recurso de revisión, resultan patentemente negligentes y denotan dejadez en el reclamo de sus derechos. Por tal razón, al igual que hizo el tribunal de instancia, le aplicaríamos a ésta la doctrina de incuria.

IV

Por último, resulta preocupante e irrazonable el remedio concedido por la Opinión del Tribunal. Conforme a ésta, el caso debe ser devuelto a ARPE para que se reabra todo el procedimiento administrativo y se le de participación a la Comisión. **Esto implica conceder el remedio solicitado por la Comisión en su demanda de *injunction;* a saber, la revocación de los permisos ya**

**otorgados. Como expresamos anteriormente, independientemente de cómo la Opinión del Tribunal llame el remedio concedido, en efecto se trata del remedio extraordinario del *injunction* y en el día de hoy la Opinión lo concede sin discutir los criterios para emitir el mismo.**

Entendemos que reabrir todo el procedimiento en esta etapa sería una medida muy onerosa para todas las partes, sobre todo ante el hecho de que este caso se encuentra ante la consideración del Tribunal desde el año 2005 y el proyecto de vivienda ha estado paralizado desde entonces. Además, es una medida innecesaria ya que, según la propia Opinión del Tribunal, la Comisión, —a pesar de no haber solicitado intervención formalmente en el procedimiento adjudicativo en controversia— tuvo conocimiento del procedimiento administrativo y participó del mismo.

Es, precisamente, a base de esa participación de la Comisión que la Opinión del Tribunal justifica su condición de "parte" en el procedimiento administrativo. Por tanto, aun si se revocara la sentencia del Tribunal de Apelaciones, sería suficiente con devolver el caso a ARPE para que la agencia notifique nuevamente a la Comisión y no para que se reabra todo el procedimiento administrativo.

Finalmente, es menester aclarar que nuestras objeciones nada tienen que ver con los méritos que pudieran tener los reclamos que hace la Comisión en nombre de los vecinos del Sector Caimito. De hecho, no vemos cómo alguien no pueda simpatizar con la idea de que nuestras comunidades

sean tomadas en cuenta en los procesos decisorios relacionados a los planes de desarrollo de su vecindario. No obstante, las comunidades deben procurar utilizar los mecanismos legales provistos para ello y actuar de forma oportuna y diligente a fin de mantener la seguridad jurídica y la confianza que los ciudadanos deben tener en las actuaciones de las agencias administrativas. Distinto a lo que parece ser la Opinión de este Tribunal, somos del criterio que cuando las decisiones administrativas advienen finales y firmes los foros judiciales pierden jurisdicción para revisarlas.

En vista de todo ello, disentimos de la Opinión emitida por el Tribunal.


                                    Federico Hernández Denton
                                         Juez Presidente